13833

NATIONAL BANK OF HONEA PATH *ET AL.* v. THOMAS J.
BARRETT, JR., & CO. *ET AL.*

(174 S. E., 581)

*Messrs. Alfred S. Wyllie* and *Benet, Shand & McGowan,* for appellant,

*Messrs. Grier, Park, McDonald & Todd,* for respondents,

April 17, 1934.

The opinion of the Court was delivered by Mr. Justice Bonham.

This action is brought by the named plaintiffs to recover of the named defendants a sum of approximately $80,000-.00, which it is alleged G. C. Swetenburg embezzled from the National Bank of Honea Path, of which he was cashier. The case was tried at Greenwood before Judge Ramage and a jury, and resulted in a verdict against John F. Clark & Co. for $24,000.00, and against the estate of G. C. Swetenburg for $35,000.00. No verdict was rendered against Barrett & Co.

·John F. Clark & Co. alone appeal.

In the trial motions were made by the appellant for nonsuit, for directed verdict, and for new trial; all of which motions were refused.

On the rendition of the verdict it first appeared in this guise: "We find for the plaintiff twenty-four thousand dollars."

Before the jury left their seats the foreman made the statement: "It is against Clark & Co., we didn't find anything against Barrett & Co."

After a colloquy between the Court and the attorneys, the jury, over the objection of attorneys for John F. Clark & Co., were sent back to reform that verdict and returned with the following verdict: "We find for the plaintiff against John F. Clark & Co., Twenty-four Thousand Dollars."

The attention of the Court was called, by plaintiff's attorneys, to the fact that the estate of G. C. Swetenburg was in default. Again a colloquy ensued between the Court and the attorneys; whereupon the Court said to the jury: "You go out and find whatever amount against the estate of Swetenburg as you think is right. You find that in addition to the other verdict."

Attorneys for John F. Clark & Co. noted an objection.

The history of this litigation, as it appears in the record, shows many anomalous things.

It appears that the Bank of Ware Shoals and the National Bank of Honea Path were closely allied. The majority of the stock of each of the corporations was owned by the same persons; they were interlocking institutions and had some directors and officers in common. When the defalcation of G. C. Swetenburg, the cashier of the National Bank of Honea Path, was divulged, the Bank of Ware Shoals through its duly appointed officers, took charge of the bank building, the bank books, the cash, the assets and securities of the National Bank of Honea Path. It made to the depositors and general creditors of the Honea Path Bank a proposition to pay them 50 per cent. of their claims against the Bank of Honea Path, which was accepted, and they took over to themselves all the assets and resources of the National Bank of Honea Path, they to assign their claims to the Ware Shoals Bank. (See complaint, Paragraphs 3 and 4, page 1 of the transcript of record.) The Bank of Ware Shoals then put its officer, F. M. Washington, in control of the affairs of the Honea Path Bank as liquidating agent.

When G. C. Swetenburg died the Bank of Ware Shoals and Mrs. Mary E. Swetenburg, the widow of G. C. Swetenburg, were appointed administrators of his estate. The evi-

dence is overwhelming—practically uncontradicted—that the Bank of Ware Shoals has had sole and absolute control of this estate, which to this date remains unsettled. It received and holds the assets of the estate save the small sum of between $3,000.00 and $4,000.00 paid in settlement of all claims against the estate, except the matter here in liquidation. Yet, the estate of G. C. Swetenburg of which the Bank of Ware Shoals was the controlling, practically the sole administrator, is sued by the Bank of Ware Shoals, its administrator, and puts up no defense. And yet, in the first instance, the jury found only against John F. Clark & Co.; and in the last instance, found against the estate of Swetenburg only when specifically instructed to do so by the Court.

It is contended that there was proof of the fact that John F. Clark & Co. knew, or are legally held to have known, that G. C. Swetenburg was speculating *with the money of the National Bank of Honea Path.*

This contention is founded upon the assumption: First, that J. C. Jones was the agent of John F. Clark & Co., and the further assumption that J. C. Jones knew that G. C. Swetenburg was speculating with the bank's money, and that his use of the name F. B. Swetenburg was without authority, and therefore John F. Clark & Co. knew it.

If it be conceded that there may be deduced by a process of unusual finesse of reasoning that there is a scintilla of evidence that John C. Jones was the agent of John F. Clark & Co. in relation to the transactions of G. C. Swetenburg, nevertheless there is another rule, more founded upon common sense and reason, to the effect that when only one reasonable inference, not just one inference, but one reasonable inference, can be deduced from the evidence, it becomes a question of law for the Court, and not a question of fact for the jury.

I have studied this voluminous record of testimony from every angle, and I find it impossible to arrive at any other conclusion than that all of the cotton speculations in which Swetenburg engaged with the money of

the bank were conducted through Thomas J. Barrett & Co. It is argued that Barrett & Co. got nothing out of these transactions but its share of the commissions. That is all these cotton brokerage concerns get out of any of their transactions. That is what they are in business for, to charge and receive commissions for forwarding the business of those desiring to deal on cotton exchanges. And by the same token that is all that John F. Clark & Co. got. The moneys spent by Swetenburg were to replace moneys which had been advanced by Clark & Co., to pay for cotton bought for Swetenburg on the market on orders sent through Barrett & Co.

When, therefore, the jury exonerated Barrett & Co., they were legally bound to exonerate Clark & Co., who operated only through Barrett & Co. The plaintiffs themselves assert these facts. They assert in Paragraph 7 of their complaint, on information and belief: "That the defendants, Thomas J. Barrett, Jr., & Co., and John F. Clark & Co. are jointly interested in the office at Anderson, S. C. *That the commissions from such office transactions had therein from time to time with various persons were for the benefit of all of said defendants and were shared, participated in and divided by and between them; and the said Thos. J. Barrett, Jr., & Co. and John F. Clark & Co. held out to the public that they were together, interested or connected in business, and that persons dealing with the office of said defendant would be protected by all of them and the said J. C. Jones, acting for Thos. J. Barrett, Jr., & Co. and Jno. F. Clark & Co., bought and sold cotton for future delivery over the wires of the said Jno. F. Clark & Co. AND THEY ACTED IN SUCH TRANSACTIONS FOR AND ON BEHALF OF EACH OTHER.*" (Emphasis added.)

Despite the substantiation of this broadside charge that the two firms, or corporations, were in partnership in their cottton transactions, it is proposed to allow to stand a verdict which completely exonerates Barrett & Co., and holds Clark & Co. responsible. Clark & Co 's office is in New York, all of Jones' communications with that office went

through Barrett & Co., and the plaintiffs assert, and their own testimony shows it to be true, *"that Jones, acting for Thos. J. Barrett, Jr., & Co. and Jno. F. Clark & Co. bought and sold cotton for future delivery over the wires of Jno. F. Clark & Co. and they acted in such transactions for and in behalf of each other."* (Italics added.)

If it be conceded, however—which is not done— that Jones was the agent of Clark & Co., that Jones knew that G. C. Swetenburg was speculating with the money of the bank, and using the name of his brother without the knowledge and consent of his brother, and that, therefore, Clark & Co. are responsible and must make good the money used by Swetenburg in his speculating, by the same process of reasoning it must be held that Thos. J. Barrett, Jr., & Co. had such knowledge and are equally liable. No other position is compatible with law and justice.

The estate of Swetenburg went into the hands of the Bank of Ware Shoals, the associate and confidante of the National Bank of Honea Path. The shareholders, officers, and agents of these two concerns are inseparable in interests and differentiated only in functions. F. M. Washington, the cashier of the Bank of Ware Shoals, was made the liquidating agent of the National Bank of Honea Path. He testified that the defalcation of Swetenburg amounted to, in round numbers, the sum of $80,000.00. The complaint fixed the amount at the sum of $79,368.50, and sought judgment for that amount.

F. M. Washington testified in this case that the bank had recovered in cash on the bond of G. C. Swetenburg the sum of $10,000.00; on the bond of Griffin, assistant cashier, $10,000.00; from securities on notes of Swetenburg $9,-500.00—making a total of cash of $29,500.00, not a dollar of which is credited to the liquidation of the defalcation. The same witness fixes the net assets of Swetenburg's estate at $35,000.00, of which $19,000.00, or thereabout, was in cash in the hands of the Bank of Ware Shoals as administrator

of the estate of G. C. Swetenburg. Here there are $59,500-.00 actual cash and assets in the hands of the bank applicable to the claimed amount of the defalcation, to wit, $79,-368.50, not so applied. In addition, it is uncontradicted that the Bank of Ware Shoals has taken to itself title to 199 acres of land owned by G. C. Swetenburg, of which no mention is made in any account thereof. Again, F. M. Washington testified that the year in which this tragedy developed and resulted in the death of G. C. Swetenburg, he made between 130 and 140 bales of cotton. What became of them? The record is as silent as the grave thereabout.

Again, John F. Clark & Co. remitted to the National Bank of Honea Path the sum of $20,142.00 arising from the cotton transactions, to the credit of the account of F. B. Swetenburg. He denies that he ever got it. There is not a scintilla of evidence that it ever went out of the Bank of Honea Path. The inevitable conclusion is that it was mingled with the funds of the bank. Surely if John F. Clark & Co. are responsible for the funds abstracted from the bank, they ought in common justice to have credit for the funds returned by them. The Circuit Court denied this right.

It appears, then, that the plaintiffs have in hand in cash from the bonds of Swetenburg and Griffin the amount of $20,000.00; and from securities on notes of Swetenburg $9,500.00; cash from estate of Swetenburg (about) $19,-000.00; other assets of the estate of Swetenburg $16,000.00 —amounting in the aggregate to $64,500.00; not one dollar has been credited on the indebtedness of Swetenburg's defalcation in so far as the record shows. These are visible and tangible things the value of which is fixed. In addition, the plaintiffs have taken title to the Bank of Ware Shoals to 199 acres of land of the estate of Swetenburg, the value of which is not fixed. It also appears they received 130 to 140 bales of cotton the year of Swetenburg's death for which no accounting is made.

All of these things are applicable to make good the defalcation before recourse can be had against Jno. F. Clark

& Co., if it should be admitted that they are liable. The case of *Allen v. Watson, 2* Hill, 319, upon which the Circuit Judge relied in refusing the motion for new trial, is not authority for the proposition that one may recover his money from one who has unlawfully abstracted it and also from him who received it. For another reason it is doubted that that case is authority here; that case distinctly holds that the laws of the State where the conversion took place must govern; "and if there be any thing in them which legalizes the transaction, the defendants are to be protected by it." The cotton brokerage business in which Clark & Co. are engaged is legal under the laws of the State of New York.

It is manifest that the bank has received from various sources funds and assets of the estate of G. C. Swetenburg enough to make good the loss it alleges it sustained by reason of the defalcation.

A curious situation has arisen in connection with the receiving of the verdict. The jury returned a general verdict of $24,000.00. That meant a verdict against all of the defendants, and necessarily it meant that in the opinion of the jury that was all the plaintiffs were entitled to receive from any or all of the defendants. Apparently the foreman of the jury volunteered the information that the verdict was against Jno. F. Clark & Co. alone; nothing was found against Barrett & Co. They were sent back to their room to reform their verdict in accordance with that statement. When they returned to the courtroom with the amended verdict, counsel for plaintiff brought to the attention of the Court that the estate of G. C. Swetenburg was in default. They evidently wanted a judgment against the estate which would enable them to apply the assets of the estate in their hands to the debt due the bank on account of the defalcation. The trial Judge sent the jury again to their room with this instruction: "You go out and find whatever amount against the estate of Swetenburg as you think is right. You find that in addition to the other verdict." They found against the es-

tate $35,000.00, the sum the evidence showed was in the hands of the administrators.

The trial Judge was asked to construe the verdicts, but declined to do so. Some one must do it; because the two verdicts are irreconcilable, and if left standing, create a state of confusion when it comes to enforcing the judgments by execution which will assuredly lead to further litigation.

It is undisputed that the administrators have in their hands the sum of $20,000.00, recovered from the sureties on the bonds of Swetenburg and Griffin, and the sum of $9,500.00 received from sureties of certain obligations of Swetenburg to the bank. The jury fixes the liability of the estate at $35,000.00, and the estate has that in hand. Here then is a sum of $64,500.00 to be applied to the amount of the shortage fixed by the complaint at $79,368.50. When this application is made, there remains due of the defalcation the sum of $14,868.50. Can the plaintiff enforce the judgment against Jno. F. Clark & Co. for more than this amount? I do not think so. To do so would be to give to the bank nearly $9,000.00 more than it had lost. This was not an action for damages, but one in the nature of the old action of trover.

I think, further, that it was error not to have given Jno. F. Clark & Co. credit for the sum of $20,142-.00 which it remitted to the National Bank of Honea Path to the credit of the account of F. B. Swetenburg, in whose name the transactions in cotton were had. These funds went into and were mingled with the funds of the bank, and arose out of the cotton transactions. As has been said, the administrators (the Bank of Ware Shoals practically alone), have had this estate in hand for nearly two years and have not settled it. How is it possible to determine the liability of others to make good this defalcation—if there be such liability—until the estate is settled and its value is finally determined. What has become of all the land Swetenburg owned? What has become of the spot cotton he had?

This opinion, written as a dissent, being concurred in by a majority of the Justices, becomes the judgment of the Court, which is: (1) That the judgment of the lower Court against Mrs. Mary E. Swetenburg and Bank of Ware Shoals, as administrators of the estate of G. C. Swetenburg, be affirmed. (2) That the judgment against John F. Clark & Co. be reversed, and the case remanded, with instructions that judgment be entered up for that defendant under Rule 27 of this Court.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE STABLER concur.

MR. JUSTICE CARTER (dissenting): This action, by the National Bank of Honea Path and the Bank of Ware Shoals against Thomas J. Barrett, Jr., & Co., John F. Clark & Co., and Mary E. Swetenburg and Bank of Ware Shoals, as administrators of the estate of G. C. Swetenburg, was commenced in the Court of Common Pleas for Greenwood County, September, 1930, for recovery of the sum of $79,-368.50, the value of the property and funds of the said National Bank of Honea Path, alleged to have been unlawfully abstracted from said bank by G. C. Swetenburg, cashier of such bank, in the years 1928 and 1929, and delivered to the defendants Thomas J. Barrett, Jr., & Co., and John F. Clark & Co., by the said G. C. Swetenburg in alleged gambling transactions, involving cotton futures. The defendants Thomas J. Barrett, Jr., & Co. and John F. Clark & Co. denied liability. No answer was filed by the administrators of the estate of G. C. Swetenburg. Issues being joined, the case was tried before his Honor, Judge C. J. Ramage, and a jury, at the November, 1931, term of said Court, resulting in a verdict of $24,000.00 against John F. Clark & Co. and $35,000.00 against the estate of G. C. Swetenburg. A motion of the defendant John F. Clark & Co. for a new trial being refused, from judgment entered on the verdict, this defendant, pursuant to due notice, appealed to this Court.

The pertinent allegations of the complaint, necessary for an understanding of the case, briefly stated, are as follows:

The National Bank of Honea Path, incorporated under the laws of the United States, with its principal place of business at Honea Path, County of Anderson, State of South Carolina, on the 21st day of February, 1930, sold its assets and resources, including its claims and demands herein involved, unto the Bank of Ware Shoals, a banking institution incorporated and existing under the laws of this State, with its principal place of business at Ware Shoals, Greenwood County, this State, the said sale and purchase being duly ratified and approved as required under the laws of this State, and thereafter the National Bank of Honea Path was placed in voluntary liquidation. It is, further, alleged by the plaintiffs that Thomas J. Barrett, Jr., & Co., a partnership, hereinafter referred to as Barrett & Co., maintained its principal place of business in the City of Augusta, State of Georgia, but, also, operated an office in the City of Greenwood, S. C., and one at Anderson, S. C., which offices, according to the allegations of the complaint, were operated for the sale and purchase of cotton for future delivery; that John F. Clark & Co., a partnership composed of the several parties named in the complaint, hereinafter referred to as Clark & Co., maintained offices in the City of New York and the City of New Orleans for the purchase and sale of cotton for future delivery, as well as other commodities, and own and operate what is known as a system of private wires running to different places in the United States, including the Town of Anderson, S. C., and the Town of Greenwood, S. C., and other places in this State; that the wires of the defendants John F. Clark & Co., at the time mentioned in the complaint, ran into the office of the defendant Barrett & Co., in the City of Anderson, which office one J. C. Jones had charge of, as well as the wires of the defendant Clark & Co., and used the same for the sale and purchase of cotton for future delivery; that the defendants Barrett & Co. and Clark & Co., according to the allegations of the complaint, were jointly interested in the said

office, at the time in question, at Anderson, S. C.; it being contended by the plaintiffs that the said Barrett & Co. and the said Clark & Co. were at the time in question jointly interested in the said office at Anderson, S. C., and in this connection the plaintiffs alleged in their complaint: "That the commission from such office transactions had therein from time to time with various persons were for the benefit of all of said defendants and were shared, participated in and divided by and between them, and the said Thos. J. Barrett, Jr., & Co. and John F. Clark & Co., held out to the public that they were together, interested or connected in business, and that persons dealing with the office of said defendant would be protected by all of them and the said J. C. Jones, acting for Thos. J. Barrett, Jr., & Co., and Jno. F. Clark & Co., bought and sold cotton for future delivery over the wires of the said Jno. F. Clark & Co., and they acted in such transactions for and on behalf of each other."

It is further alleged by the plaintiffs that the said G. C. Swetenburg died intestate, October, 1929, and his estate was duly administered upon by the Bank of Ware Shoals and Mrs. Mary M. Swetenburg, widow of the said deceased, and they are in charge of the settlement of said estate. On account of the pertinence of the same we quote in full the following allegations of the complaint:

"9. That heretofore and up to the ` .... day of .........., 1929, one G. C. Swetenburg, a citizen and resident of the County of Anderson, in said State, of limited means but receiving a salary of $2,700.00 per year, was cashier of the plaintiff, the National Bank of Honea Path, and principal officer and agent of said bank in charge of all its affairs and business, and his duties were those usually imposed upon a cashier of a country bank, to pay out the funds of the bank on the presentation of checks and drafts drawn upon the bank by its customers, for which purpose the cash money of the bank and its credits with other banks, and all of its assets were in his possession and under his control; that the said G. C. Swetenburg was well known in the community to

be in extremely modest financial circumstances and that all of the above stated facts were well known to the defendants, Thos. J. Barrett, Jr., & Co., and Jno. F. Clark & Co., and especially their common agent, J. C. Jones.

"10. That heretofore, to wit, on or about the first day of January, 1928, and probably before that time, the said G. C. Swetenburg began a series of very large speculations of gambling transactions in cotton future covering many thousands of bales, and·the said large speculations or gambling transactions were carried on through the office of the said Thos. J. Barrett, Jr. & Co., and over the wires of the said John F. Clark & Co., and it was arranged and understood by and between the parties that all of the trades and transactions in respect thereto should be carried on in the name of one F. B. Swetenburg, who at the time resided at Abbeville, in the County of Abbeville, in said State, and who was in very modest circumstances and utterly unable to handle the large speculations, which fact was known to or ought to have been known to the said John F. Clark & Co., and the said Thos. J. Barrett, Jr., & Co., and the said series of speculations or gambling transactions was conducted by the said G. C. Swetenburg through the office above named up until the time of his death in October, 1929.

"11. That during the said period of time the said G. C. Swetenburg abstracted from time to time on divers and sundry dates from the said the National Bank of Honea Path large sums of money belonging to the said bank approximating Seventy-nine Thousand Three Hundred Sixty-eight and 50/100 ($79,368.50) Dollars, and during said period on divers and sundry dates transferred and delivered by draft or otherwise said large sums of money to the amount of Seventy-nine Thousand Three Hundred Sixty-eight and 50/100 ($79,368.50) Dollars to the said Jno. F. Clark & Co., who received the same from the said G. C. Swetenburg for the benefit of themselves and the other defendants herein in the purchase and sale of cotton for future delivery, the said defendants well knowing or ought to have known that

the said funds belonged to The National Bank of Honea Path and not to the said G. C. Swetenburg or his brother, the said F. B. Swetenburg, and that the said G. C. Swetenburg and F. B. Swetenburg could neither of them have accepted or received the actual cotton contracted for, which fact was well known to the said J. C. Jones and the defendants, Jno. F. Clark & Co., and Thos. J. Barrett, Jr., & Co.; that the funds or moneys of the said The National Bank of Honea Path so abstracted, paid over to and received by the said Jno. F. Clark & Co., was for the benefit of themselves and their codefendants."

I, also, call special attention to the following allegations of the complaint:

"12. That heretofore, on or about the .... day of August, 1930, the offices maintained by the said Thos. J. Barrett, Jr., & Co., and Jno. F. Clark & Co., in Anderson, as aforesaid, were discontinued and closed; that the said J. C. Jones, Thomas J. Barrett, Jr., & Co., and Jno. F. Clark & Co., at the time stated were acting for each other and that the said office at Anderson, S. C., was operated as aforesaid for the benefit of the said Thos. J. Barrett, Jr., & Co., and Jno. F. Clark & Co., and was in law and fact the office of the said Thos. J. Barrett, Jr., & Co., and Jno. F. Clark & Co., the said J. C. Jones being in charge thereof for them and for their benefit and interest therein.

"13. That it was not the *bona fide* intention of the said Thos. J. Barrett, Jr., & Co., or of Jno. F. Clark & Co., and the said G. C. Swetenburg or his brother, F. B. Swetenburg, to actually make deliveries or receive and accept the actual cotton traded in as aforesaid, but the differences were to be and were from time to time settled by and between the parties by the payment of money, which money was unlawfully abstracted from the National Bank of Honea Path and it was known or should have been known to the said Thos. J. Barrett, Jr., & Co., and Jno. F. Clark & Co., that the said G. C. Swetenburg could not possibly handle, receive or accept actual deliveries of the said cotton, or that his brother,

F. B. Swetenburg, could not handle, receive or accept actual deliveries of same.

"14. That by and under the laws of the State of South Carolina defendants are liable to the plaintiffs for the amount of the money so unlawfully abstracted from the National Bank of Honea Path and the loss sustained by it on account of the actual amounts abstracted and embezzled from it and transmitted and received by the said Jno. F. Clark & Co., in which the said Jno. F. Clark & Co., and Thos. J. Barrett, Jr., & Co., were at all times jointly interested."

It is the contention of appellant, as set forth in brief filed in the cause, that the trial Judge erred in the following particulars: In refusing motion for nonsuit; refusing motion for directed verdict; refusing motion for new trial based on the ground that the verdict in the case is illogical and unlawful, in that the jury relieved the defendants Thomas J. Barrett, Jr., & Co. of any liability, when, on any theory, they were liable if John F. Clark & Co. were liable. It is also the contention that the Judge further erred in charging on the law of agency; in charging on the facts in the case; in not charging, at the request of the defendant, facts as to which were not in dispute; and, also, erred in not construing the verdict rendered. Appellant also contends that his Honor erred in charging "that a contract made in an assumed name, or in the name of a party not authorizing it, is an unlawful contract; the error being that party executing a contract under an assumed or fictitious name can still be bound thereby and make said contract lawful."

In passing upon the allegations of error imputed to the trial Judge, I consider it unnecessary to quote or discuss, at length, the testimony in the case. The testimony adduced at the trial covers over three hundred pages of the transcript, and a full discussion of the same would make this opinion unnecessarily lengthy and serve no useful purpose. I deem it sufficient to state that, after a careful study of the record, it is my opinion that the testimony given at the trial, when

considered in the light of all the surrounding facts and circumstances appearing in the case, tended to establish the material allegations of the complaint. The trial Judge, therefore, committed no error in overruling appellants' motion for a nonsuit and direction of a verdict, based, briefly stated (as set forth in Appellants' Brief), upon the grounds: "(a) That no direct knowledge by Clark & Cc., had been shown of any facts sufficient to put it on notice of any illegal act on the part of F. B. Swetenburg or G. C. Swetenburg; (b) even if the knowledge of J. C. Jones be imputed to Clark & Co., as their agent, which is denied, such knowledge as J. C. Jones had was insufficient to put them on notice as to any illegal acts; (c) that there was nothing illegal in the transactions between Clark & Co., and F. B. Swetenburg and (d) that the National Bank of Honea Path by its course of action is estopped from seeking to recover from Clark & Co." In this connection I wish to state, further, that under my view of the testimony and the surrounding circumstances appearing in the case it may be reasonably inferred that Clark & Co. had knowledge of facts (not necessarily known to Barrett & Co.), sufficient to put the company on notice of illegal acts on the part of F. B. Swetenburg or G. C. Swetenburg concerning the matters involved herein; and, further, that not only was knowledge of J. C. Jones imputed to Clark & Co. as their agent, but such knowledge as Jones had was sufficient to put Clark & Co. on notice as to the alleged illegal acts; also, a reasonable inference could be drawn from the testimony and the facts and circumstances in the case that illegal transactions between Clark & Co. and the Swetenburgs existed, though the same may not have been known to Barrett & Co. Further, in my opinion, the trial Judge committed no error in overruling the motion for nonsuit and direction of a verdict upon the ground of estoppel.

In my opinion, there is no merit in the contention that the judgment should be reversed upon the ground that the trial Judge erred in not granting a new trial because the jury did not find a verdict against Barrett & Co. The plaintiffs, in

their complaint, demanded judgment against all of the defendants, but failure of the jury to find against one of the defendants, Barrett & Co., furnished no legal ground for setting the verdict aside as to the other defendants, on motion of one of the others, Clark & Co., for under the testimony and surrounding facts and circumstances of the case the jury could reasonably find against Clark & Co. and not against Barrett & Co. The plaintiffs *only,* under the facts and circumstances of the case, had a legal right to complain as to this, and they are not complaining. The exceptions charging error in this respect must be overruled.

Another allegation of error urged by the appellant is under the fourth exception, reading as follows: "That his Honor erred, it is respectfully submitted, in charging at the request of the plaintiff that a contract made in an assumed name, or in the name of a party not authorizing it, is an unlawful contract; the error being that party executing a contract under an assumed or fictitious name can still be bound thereby and make said contract lawful."

It will be observed that the appellant does not, under this exception, quote any portion of the trial Judge's charge wherein it is contended his Honor gave erroneous and prejudicial instruction to the jury, and it is clear that the exception does not comply with the rule as to definiteness, but is too general to require the Court's consideration. However, a reading of the charge as a whole convinces me that the jury was not misled in respect to the matter complained of.

Under the fifth exception error is charged as follows: "5. That his Honor erred in charging the ninth request of the plaintiff in leaving it to the jury to say whether the agent of John F. Clark 'knew or ought to have known' that the funds used in the cotton transaction with Clark & Co., were the bank's, without further defining to the jury what facts would be sufficient to charge an agent with notice that the funds were the property of the bank."

The following is the request of the plaintiffs which his Honor charged: "9th. If you find as facts in this case that

G. C. Swetenburg was the cashier of the National Bank of Honea Path, and that he unlawfully used the funds of the bank in the execution of contracts for the future sale of cotton with John F. Clark & Co., and had the said contracts executed in the name of F. B. Swetenburg, and John F. Clark & Co., through one of its agents, knew that the said contracts were made by the said G. C. Swetenburg in the name of F. B. Swetenburg, and knew or ought to have known that such funds were the bank's, it is for you to say whether the said John F. Clark & Co. would be liable to plaintiffs for such funds. The cashier of a bank has no right to use its funds unlawfully abstracted for his own purposes, and cannot convey title to such funds to any other party who knows, or ought to have known, that the funds so used by him did not belong to him."

Considering this request in connection with the entire charge, it is my opinion that the jury was sufficiently instructed on the question raised, but if the appellant desired a fuller charge on this phase of the case a request to that effect should have been made, which appellant did not do.

Appellant, under the sixth exception, imputes error to the trial Judge in regard to charging another of plaintiffs' requests, alleging: "6. That his Honor erred in charging the eleventh request of the plaintiff: 'I charge you if one man trades in the name of another man the man who trades with him will have the burden of proof cast upon him to show authorization for the trade,' the error being that this was a charge on the facts and assumed as a fact that Clark & Co. knew that G. C. Swetenburg was trading in the name of F. B. Swetenburg, which was an issue of fact in the case."

The request of the plaintiffs complained of by the appellant appears in this language: "11th. I charge you that when one man trades in the name of another man, the man who trades with him will have the burden of proof cast upon him to show the authorization for the trade; and, it is for you to say, if he does not show to your satisfaction that the name

was authorized or ratified, the contract for future delivery of cotton would be outlawed by the Cotton Futures Act, for it outlaws all contracts for future delivery not *bona fide* made between real purchasers or real sellers. Assumed purchasers or sellers of cotton for future delivery, or those whose names are not authorized are illegal and gambling contracts, if known to the broker or his agents."

When this language is taken in connection with the entire charge, it will be seen that no prejudicial error appears.

The seventh exception also imputes error to the trial Judge in charging on the facts. We are unable to agree with appellant in this contention. The language complained of by appellant must, of course, be viewed in the light of the entire charge, and when this is considered, no error appears.

The appellant's eighth exception imputes error to the trial Judge in charging the following request of the plaintiffs: "19th. If A receives money for B and deposits the money to B's account in a bank, and B draws down the money so deposited, and the money was deposited for a specific purpose and A communicates that purpose to B and B uses the money for that purpose, then A becomes an agent of B for that purpose. If such matters continue over a long course of dealing, B will be estopped to disclaim the agency with any person dealing with A as such agent."

It is contended by appellant that this charge was not applicable. In my opinion, the charge was applicable but certainly was not prejudicial.

Under Exception 9 error is imputed as follows: "9. That his Honor erred in refusing to charge the seventh request of the defendant, which was as follows: 'The undisputed evidence shows that all of the amounts purported to have been deposited in the National Bank of Honea Path by F. B. Swetenburg to the account of John F. Clark & Co., were so reported to John F. Clark & Co., by the National Bank of Honea Path by Western Union telegrams and that none of such funds were received by John F. Clark & Co., from or

through Thomas Barrett, Jr., & Co., or any of their agents', the error being that such request embodied a correct statement of uncontradicted facts as proven in the case."

In my opinion, more than one reasonable inference can be drawn from the testimony touching the facts referred to in the request presented by the appellant and, therefore, his Honor properly refused to charge the request and submitted the issues involved to the jury.

The appellant also charges error because of his Honor's refusal to charge the following request of the defendant: "Of the funds transmitted by the National Bank of Honea Path to John F. Clark & Co., sought to be recovered in this action, the uncontradicted proof shows that the sum of Twenty Thousand One Hundred Forty-Two ($20,142.00) Dollars repaid by John F. Clark & Co., in the name of F. B. Swetenburg became co-mingled after such repayment in the bank funds of the National Bank of Honea Path, and if such amount was subsequently illegally extracted from said bank, John F. Clark & Co., would not be liable for such subsequent extraction and is entitled to credit for said amount."

Under my view of the testimony in the case, more than one reasonable inference could be drawn from the testimony as to whether the bank received the money referred to in this request and, therefore, it was for the jury to determine that issue, and his Honor properly refused to charge the request.

The appellant also imputes error to the trial Judge in not construing the verdict in the case, as requested in the motion for a new trial. In my opinion, it was not incumbent upon the trial Judge to construe the verdict, and I do not think the appellant was prejudiced in any way by his Honor's failing to construe the verdict as requested.

In my opinion, the issues in the case were properly, fairly, and impartially submitted to the jury. I think that the exceptions should be, therefore, overruled and the judgment of the lower Court affirmed.

## Order on Petition for Rehearing

Mr. Chief Justice Blease, Messrs. Justices Stabler and Bonham:

Respondents have filed an elaborate petition for rehearing. They allege misconception and misconstruction of issues, and errors in findings of fact, by the Court.

The controlling issue made by the petition is that which alleges that the Court erroneously decided the case upon the theory that Barrett & Co. were the agents of Clark & Co. and that the doctrine of *respondeat superior* was applicable; when it should have held that Barrett & Co. and Clark & Co. were joint tort-feasors, in that they were jointly interested in receiving and employing in illegal cotton future transactions money embezzled by Swetenburg from the National Bank of Honea Path.

Whatever may have been the theory of plaintiff in the matter, the case was tried upon the principles applicable to the relation of principal and agent. Throughout the trial the effort was to show that Jones, the employee and manager of the office of Barrett & Co. at Anderson, acted for Barrett & Co. as the agent for Clark & Co. in the transmission of funds sent them by Swetenburg to Clark & Co. Respondents in their petition for rehearing urge that in addition to the question of agency there was one of joint tort-feasors.

In their brief respondents' attorneys say: "The Court will please observe that the charge of the learned trial Judge, and particularly plaintiff's request to charge, dealt only with the first principle, and left it squarely to the jury to decide whether or not Clark received embezzled fund with knowledge or notice. *This therefore involved the issue of the agency of Barrett or the Anderson office, or J. C. Jones, manager, as one of the principal questions in the case.*" (Italics added.)

The first principle there alluded to is thus stated by respondents in their brief: "That a broker who receives trust funds from a customer to be used in illegal or gambling

transactions, with knowledge or notice of the customer's unlawful conversion or illegal use of trust funds, becomes himself a trustee for the amount received. If one or more participate, they may be sued together, as co-criminals, or at least joint tort-feasors, and the *cestui que* trust can proceed against the second trustee or trustees."

In their brief respondent's attorneys say: "It is admitted that Jones, Manager of the Anderson office, represented Barrett. It is conclusively established that the Anderson office and Jones represented Clark. *This question of agency was submitted to the jury under appropriate instructions.*" (Italics added.)

Again they say: "*This question of Jones and Barrett's agency of Clark underlies the question of Clark's knowledge or notice, and is presented by the issues of several exceptions.*" (Italics added.)

The presiding Judge, of his own initiative, charged the jury as follows: "An agent is one who transacts business for another, and a partnership and the individual members of the partnership, or all or any of its employees, may be the agents of another partnership, and if so they are bound by the knowledge of such agent."

The Judge did not charge, nor did plaintiff's counsel request him to charge, the doctrine of joint tort-feasors. The case was submitted to the jury upon instructions pertinent to the issue raised by the theory that Barrett & Co. were the agents of Clark & Co. If counsel had desired the doctrine of joint tort-feasors submitted to the jury, it was their duty to request that it be done.

It is inconceivable that the jury, under the instructions upon which the case was submitted to them, could have found a verdict against Clark & Co. except upon the theory that Barrett & Co. were the agents of Clark & Co.

It does not need that authorities be cited in support of the proposition that if the agent be exonerated of any action which would make the principal liable through his conduct, no liability will attach to the principal.

24

We think that under the instructions upon which this case was submitted to the jury the doctrine of *respondeat superior* is applicable.

It may be that certain recitals in the main opinion may be in error on immaterial matters; but in the light of our holding herein upon the main issue they have become immaterial.

Accordingly, the petition for rehearing is denied.

MR. JUSTICE CARTER: In my opinion the petition for a rehearing should be granted, and I therefore dissent to the above order.