15233

McMILLAN v. SOUTHERN RY.-CAROLINA DIVISION

(13 S. E. (2d), 915)

*Messrs. Frank G. Tompkins, Harley & Harley* and *Du-Bose Boylston* for appellant,

*Messrs. Searson & Searson* for respondent,

March 21, 1941.

The opinion of the Court was delivered by Mr. Associate Justice Carter.

Plaintiff brought this action to recover actual and puniaive damages for the alleged negligent and reckless killing of Fitzhugh McMillan by the defendant.

The complaint alleges that about two o'clock a. m., on May 29, 1938, plaintiff's intestate was driving from Allendale in the direction of Barnwell along State Highway No. 3; that at the point where this highway crosses the railroad, about five miles north of Allendale, he lost control of his automobile, whereupon it left the "highway, overturning and coming to rest partially upon the crossties of the defendant's railway track a short distance north of the" crossing; that in the accident deceased suffered severe cuts and bruises resulting in the loss of "great quantities of blood, weakening and incapacitating him" physically and mentally; that shortly thereafter, plaintiff's intestate, observing a freight train approaching from the direction of Allendale, signalled it to stop so as to avoid a collision with the wrecked automobile that defendant's agents, servants and employees stopped the train—its length being extended completely over the cross-

ing and it being in contact with the wrecked automobile—, alighted and removed the automobile from contact with the track; that deceased, who was obviously growing more helpless and weakened, mentally and physically, from his injuries, and loss of blood, and who was on the east side of defendant's track, appealed to the trainmen to carry him to Allendale, which was the nearest point at which he might receive medical assistance, but that they, in response to such appeal, notwithstanding his dazed and weakened condition, with his mental and physical faculties greatly impaired, carelessly, negligently, recklessly, knowingly, willfully, wantonly and maliciously, invited paintiff's intestate to cross the railroad track from where he was on the east side thereof to a house on the west side of the track in order to secure help in getting back to Allendale; that such trainmen knowing his condition, and also knowing that other trains were scheduled to pass over the crossing during the night, including a passenger train running north from Savannah to Columbia which was due at this crossing in a very short time, left him standing alone; that deceased, acting upon, and as the direct and proximate result of, the above invitation, undertook, in his weakened, helpless and dazed condition, which was steadily growing worse, to cross the track in order to secure help in getting back to Allendale, but that before he was able to get across, another train, running at an excessively high rate of speed, struck him and inflicted injuries which resulted in his death sometime during the night or early morning. Plaintiff alleges that her intestate's death resulted from the "careless, negligent, grossly negligent, reckless, willful, wanton and unlawful conduct" of defendant, its agents, servants anl employees, in the following particulars: (1) In inviting him, knowing his condition as above set out, to go upon and cross its railway track at a time when they knew that another fast train was nearly due; (2) in running the passenger train without sounding any signals upon approaching the crossing so as to warn plaintiff's intestate of its coming; (3) in operating said train at an ex-

cessive rate of speed; (4) in failing to carry an adequate or sufficient headlight on its engine so as to enable its agents, servants and employees to exercise proper care for the safety of persons, including plaintiff's intestate, who were or might have been at or near, approaching or upon the said crossing; (5) in failing to keep a proper and vigilant lookout ahead for the sake of the safety of any person who might have been helpless on the said track, or of any person at, near, on or approaching, the crossing.

Defendant set up a general denial. It also pleaded, as a proximate cause of plaintiff's intestate's death, his contributory carelessness, negligence, gross negligence and willfulness in going upon said track, "whereon he knew trains were being operated, and without using the slightest care for his own protection, and in otherwise failing to exercise that care, caution and prudence which an ordinary careful, cautious and prudent person would have exercised under similar circumstances."

Defendant's motions for a nonsuit and for a directed verdict were overruled and the jury awarded plaintiff $3,500.00 actual damages. Judge Lide thereafter refused to grant a new trial. The case now comes to this Court on appeal.

Could it be reasonably inferred from the testimony adduced that the death of deceased was caused by the negligence of appellant? Judge Lide thought it could be, and therefore overruled defendant's motion for a directed verdict. Appellant urges, however, that such motion should have been granted for the reason that there was no evidence, direct or otherwise, to show that deceased was killed by any of defendant's trains, and that it necessarily follows that any verdict rendered must rest upon surmise, conjecture and speculation.

We shall, therefore, keep in mind, during our consideration of the case, the well-settled principle that a verdict must be founded on evidence and cannot rest on surmise, conjecture or speculation. *Williamson v. Southern Railway Company,* 183 S. C., 312, 191 S. E., 79;

*Rudd v. Fairforest Finishing Company,* 189 S. C., 188, 200 S. E., 727; *Cagle v. Judson Mills,* 195 S. C., 346, 11 S. E. (2d), 376.

Was plaintiff's intestate helpless upon the track at the time he was alleged to have been struck by the train? It is alleged, as we have already seen, that deceased, while in a weakened, helpless and dazed condition, because of loss of blood from cuts received in the automobile accident, and which condition was gradually growing worse, attempted to avail himself of defendant's invitation to cross its tracks from the east side to the west side in order to secure help in returning to Allendale for medical treatment, but that before he was able to get across, another train struck him and inflicted injuries which resulted in his death some time during the night.

Two witnesses for the plaintiff testified that they visited the scene of the accident early in the morning after deceased was killed, one stating that he arrived there before the dead body was removed, and the other that he arrived soon after the body was removed; that they saw the wrecked automobile, which was some thirty-five feet north of the crossing and on the east side of the track; that there was a good deal of blood in the car and the cushion was bloody; that there were drops of blood on the running board and on the ground around the running board; that there was a great quantity of blood on a shirt found at the car; that they found drops of blood leading from the automobile back toward the concrete highway at the crossing; that the drops of blood continued for about twenty feet along the highway leading toward Allendale; that the trail of blood drops then turned back toward the railroad track going directly to the crossing and onto the concrete highway and then proceeded to a point just west of the east rail of the track; that from this point where the blood drops ended, smears of blood continued across the railroad track on the concrete highway to a point just west of the west rail of the track; that at the point where the smears of blood stopped a big "splotch" of blood

was found, one of the witnesses stating that he saw the dead body before it was put in the ambulance and that this "big splotch of blood" was "where his head was." There was also testimony that the dead body was found lying with the head toward the northwest and with a foot on the west rail, one foot being severed and lying "way up the railroad;" that a shoe heel was found wedged down between the "composition road and the iron rail," the testimony placing this shoe heel about in the position as that where the remaining foot of the dead body lay. As tending to connect the heel found with the shoe worn by deceased at the time of the accident, we quote the following: "Q. And as far as you know about that shoe heel it could have come off of my shoe? A. It could have, but the shoe that I have at home that Fitzhugh had on has the heel off of one of the heels." Dr. Palmer testified that all the different injuries sustained by deceased contributed to his death, but that the main cause was the fracture of the skull which produced instantaneous death; that bleeding would continue from a wound only so long as the heart continued to beat; that there was a wound on deceased's right temple and right ear which had bled profusely, resulting in the loss of a considerable amount of blood; that such loss of blood would produce a gradual weakening of the mental and physical faculties, such faculties being only slightly impaired in the beginning but which would be blotted out as the bleeding continued; that one suffering from such a condition could stand erect and walk for some distance but after a time he would become prostrate; that even though unable to walk he could still propel himself for some time on his hands and knees.

Defendant's witnesses who were in charge of the freight train testified that it was stopped in order to prevent collision with the wrecked automobile which rested on the crossties; that deceased, who helped them remove the automobile from contact with the railroad track, appeared to be normally strong, mentally and physically; that they saw a scratch on the side of his face and that there was a cut behind one ear

which was bleeding a little but not profusely, some blood being on his face.

We think, however, it could be reasonably inferred from the testimony that deceased received a cut in the automobile accident from which he bled profusely, as evidenced by the blood in and around the automobile and by the statement of Dr. Palmer; that the trail of blood drops was blazed by deceased, when continuing to bleed profusely from the cut in the head, he walked there along in an attempt to avail himself of defendant's invitation to cross its track in order to secure aid in getting back to Allendale for medical treatment; and that he became so weakened from loss of blood after he reached the track that he fell prostrate and was attempting, in such helpless condition, to crawl to a place of safety on the west side of the track when he was struck by defendant's train, as evidenced by the smears of blood, the pool of blood west of the west rail of the track and the shoe heel wedged under the rail.

But appellant urges that should respondent's theory, that deceased was helpless on the track, be sustained, then the only inference to be drawn from the testimony on her behalf is that Fitzhugh McMillan had already died from loss of blood at the time the train passed, and was, therefore, not killed by such train. This contention, however, is without merit. As already seen, Dr. Palmer testified that the fracture of deceased's skull produced instantaneous death and that bleeding would continue only so long as the heart continued to beat. It is reasonable to believe that after deceased received this fracture—and no attempt was made to show that such fracture was sustained other than by being hit by the train—he bled very little. It necessarily follows, therefore, that one could reasonably infer that the pool of blood at the point where deceased's head lay was produced, while he was prostrate on the track but while he was still alive and his heart beating, by the continued bleeding from the wound on his head sustained in the automobile accident. It was clearly the province of the jury to decide whether de-

ceased was helpless on the track, and whether he was alive, at the time the train passed.

In view of the holding immediately above, the question of appellant's negligence becomes one for the jury, under the pleadings and testimony. It was alleged, and testimony was offered in support thereof and also in direct denial thereof, that no signals were sounded upon approaching the crossing; that the train was operated at an excessive rate of speed without an adequate or sufficient headlight on its engine; and that there was a failure to keep a proper and vigilant lookout ahead for anyone who might be helpless upon the track. Under the rulings laid down in *Key v. Charleston & W. C. Railway Company*, 144 S. C., 164, 142 S. E., 336, Judge Lide was correct in submitting to the jury the issue as to whether defendant was negligent in the particulars set out. See, also, *Sharpe v. Southern Railway Company*, 125 S. C., 478, 119 S. E., 245.

Appellant contends, in the last place, that the trial Judge should have directed a verdict in its favor for the reason that the testimony of the train crew, the persons who last saw deceased alive, showed that he could not have been helpless at the time he was alleged to have been hit, and that, therefore, if he was struck by the train his own negligence and carelessness in going upon the track and remaining thereon when he could have seen the train approaching contributed to his death as the proximate cause thereof.

We have already concluded, however, that it is reasonably inferable that deceased was helpless upon the track when struck by the train. Under the circumstances, therefore, it was for the jury to say whether or not he used all the care and caution required of him, and all the care which his mental and physical faculties would permit, in removing himself to a place of safety and thus avert the disaster which befell him. Judge Lide was correct in submitting to that tribunal the issue as to contributory negligence.

All exceptions are overruled and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE G. B. GREENE concur.