282 S.C. 526 (1984)
320 S.E.2d 454
O. W. GOSNELL, Jr., Respondent,
v.
SOUTH CAROLINA DEPARTMENT OF HIGHWAYS AND PUBLIC TRANSPORTATION, Appellant.
0238
Court of Appeals of South Carolina.
Heard May 15, 1984.
Decided August 27, 1984.
*527 Atty. Gen. T. Travis Medlock and Staff Atty. Grady L. Patterson, Columbia, for appellant.
Robert E. Staton of Quinn & Smith, Columbia, and Finley B. Clarke of Clarke & Johnson, Florence, for respondent.
*528 Heard May 15, 1984.
Decided Aug. 27, 1984.
CURETON, Judge:
Respondent, O.W. Gosnell, Jr., brought this suit against the South Carolina Department of Highways and Public Transportation (Highway Department) for damages he sustained when his vehicle collided with a road grader owned and operated by the Highway Department. The jury returned a verdict for Gosnell and the Highway Department appeals.
At the appropriate stages of the trial, the Highway Department moved for nonsuit, directed verdict and judgment non obstante veredicto on the ground that Gosnell's injuries were caused by his sole negligence. Alternatively, the Highway Department argued that Gosnell's conduct constituted contributory negligence, thus barring him from recovery. These motions were denied by the trial judge. We reverse and remand for the entry of judgment for the Highway Department.
On the clear and sunny morning of March 26, 1980, Gosnell was proceeding in a southerly direction on U.S. Highway No. 52 when his vehicle collided with the Highway Department's road grader. At the point of the accident, U.S. Highway No. 52 is a four-lane divided highway, flat and straight. The road grader and its supporting crew were conducting road work along the right shoulder of the southbound lanes. Parked along the shoulder and off the traveled portion of the highway was a yellow tractor and a large yellow dump truck.
The road grader's method of operation was as follows. Upon moving soil forward to the desired location, the grader backed up to a position where it could move more dirt forward. As the grader backed up, part of it traveled upon the paved portion of the highway. At the time of the collision, the road grader's left front and rear wheels were upon the pavement and its other wheels were on the dirt shoulders.[1]
On appeal the Highway Department advances three arguments for reversal of the jury's verdict. First, the Highway *529 Department contends that Gosnell's negligence in exceeding the speed limit, failing to yield the right-of-way pursuant to Code Section 56-5-2370 (Supp. 1983) and failing to observe the grader on the highway constitutes the sole proximate cause of the collision. Secondly, the Highway Department argues that even if it were negligent, Gosnell's conduct constitutes contributory negligence barring recovery. Finally, the Highway Department contends that the trial judge committed reversible error by permitting Gosnell to introduce into evidence the Highway Department's regulations.
We will first consider the question of whether the trial judge erred in refusing the Highway Department's motions for nonsuit, directed verdict and judgment n.o.v., upon the ground that there was no evidence of actionable negligence on the part of the Highway Department. Our review of the record reveals evidence from which the jury could reasonably find actionable negligence.
Gosnell testified that at the time of the collision he was driving his automobile about fifty-five miles per hour. Immediately preceding the collision, he did not recall observing "speed reduction" or "road work" signs warning motorists of the road repair operation. Nor did he remember seeing a flagman or other Highway Department personnel on foot. In relating his scant recollection of the severe accident, he recounted looking down at his speedometer and then suddenly colliding with the road grader. Gosnell further testified that he did not recollect seeing any Highway Department vehicles parked or operating along the right shoulder of the highway.
Frank Moore, a business associate of Gosnell, testified that he was driving a substantial distance behind Gosnell's car and although there were several cars between his car and Gosnell's, he never lost sight of Gosnell's vehicle. While he recalled seeing a warning sign approximately one mile from the collision site, he did not remember seeing signs warning of road construction or a flagman in the immediate vicinity of the wreck. Like Gosnell, Moore testified that he did not see the road grader before the collision; he looked down at his speedometer and when he looked up again, Gosnell had collided with the road grader.
In addition to Moore, Gosnell also called as witnesses Kevin Kelly, an insurance agent, and Jessie Wilkes, the operator of the road grader. Kelly related observing "men working" signs *530 in the vicinity of the accident, but did not remember any speed limit signs. As an eyewitness to the accident, he testified to seeing the road grader backing up with alarms sounding to a point where it obstructed more than one-half of the right lane. He estimated the speed of Gosnell's car to be fifty to fifty-five miles per hour and watched it run headlong into the rear of the grader. He noted that nothing obstructed Gosnell's view of the grader and that Gosnell did not apply his brakes before impact.
Jessie Wilkes, the road grader operator who was called as a hostile witness by Gosnell, testified that when he first spotted Gosnell's oncoming vehicle approximately 100 to 150 feet away or "maybe further," he stopped the grader and shifted into forward gear. At time of impact, the grader blocked approximately two-thirds of the right lane. He testified further that he heard no tire squeals, nor saw any skid marks on the road. He admitted that at the time of the accident, the right lane was not closed off to traffic nor was the flagman directing traffic. He related that the safety measures actually employed by the Highway Department consisted of the use of four red flashing lights on the grader, a revolving strobe light atop the cab section of the grader, a safety horn that automatically sounded when the grader geared into reverse, a danger sign mounted over the grader's radiator and road work signs posting a thirty-five miles per hour speed limit.
Witnesses for the Highway Department testified that warning signs were posted at various points as one approached the construction site and also in the immediate vicinity of the site. The former signs were permanent type signs while the latter were mobile type signs thirty-six inches in size. According to the Highway Department's witnesses, the thirty-six inch signs cautioned of road work ahead and mandated a thirty-five mile per hour speed limit. Witnesses characterized the grader operation as a "mobile operation." Thus, the Highway Department's crew chief explained that the thirty-six inch warning signs were more appropriate than forty-eight inch signs. The crew chief admitted that a flagman should have been provided for the grader when it obstructed the right lane of the highway. Finally, Jack Rhodes, an employee of a utilities company and a witness for the Highway Department, testified that he was following immediately behind Gosnell's vehicle at the time of the accident. *531 He also testified that prior to the accident he saw the road grader in the right-hand lane, whereupon he slowed down and moved into the left-hand lane. He also related that there was nothing to obscure Gosnell's view of the grader and that Gosnell collided with the grader headlong.
In considering the question of whether the trial court erred in refusing the Highway Department's motions for nonsuit, directed verdict and judgment n.o.v., on must view the evidence and all inferences reasonably deducible therefrom in the light most favorable to Gosnell. Woodward v. Todd, 270 S.C. 82, 240 S.E. (2d) 641 (1978). Our task is to determine if there was sufficient evidence to submit this issue to the jury. We think there was. The evidence is conflicting as to whether the Highway Department took the necessary precautions to warn Todd of the dangerous construction site. Specifically, there is a conflict regarding whether proper signs were displayed, the location of the signs, whether a flagman should have been directing traffic around the grader and whether the Highway Department should have blocked-off the right-hand lane of traffic at the time of the accident. A reasonable inference may be drawn by the jury that the Highway Department was negligent. The trial judge was correct in permitting the jury to decide this issue. Cantrell v. Carruth, 250 S.C. 415, 158 S.E. (2d) 208 (1967).
We next discuss the question of whether Gosnell was contributorily negligent as a matter of law. The Highway Department argues that the evidence shows without contradiction that Gosnell violated state law by exceeding the posted speed limit and in failing to yield the right-of-way to the grader which was already upon the roadway. It argues that violation of the statutes is negligence per se. Grier v. Cornelius, 247 S.C. 521, 148 S.E. (2d) 338 (1966). The Highway Department also argues that though the grader blocked the right lane of the roadway, Gosnell could have easily gone around it and averted any injuries to himself.
Gosnell's primary argument for sustaining the jury verdict was stated best by his attorney in his argument to the court resisting the Highway Department's motion for a judgment n.o.v. He argued:

*532 "Your Honor, there is no conceivable way that the South Carolina Supreme Court would permit the Highway Department to use that statute [Right-of-way statute] to its advantage in driving a motor grader suddenly out onto the highway, which was not visible and was obscured by a dump truck, which is a possible inference the jury could make. He certainly can't say that he can suddenly pull out into the highway in front of a motorist and we've got to yield the right-of-way to him. We've got to have a reasonable opportunity to do it. And that's what the jury concluded; that that's what he did. That's what the motor grader did; he pulled out. That's the only conceivable way they could have found a verdict, and that's what they decided: He pulled out suddenly and caused the wreck." (emphasis added).
We agree with Gosnell's counsel that the only possible way the jury could have found that Gosnell was not contributorily negligent, consistent with the facts of this case, was to have found that the motor grader suddenly and without warning darted out into the path of Gosnell's automobile.
To support his "theory" that the facts support a reasonable inference that there was sudden movement of the grader into the path of his car, Gosnell points to his own testimony and that of his witness, Frank Moore. They both testified that they did not recall seeing the grader in the roadway before impact and that they looked at their speedometer, then suddenly the wreck occurred.
South Carolina adheres to the rule which requires submission of an issue to a jury whenever there is material evidence tending to establish the issue in the mind of a reasonable juror. Wright v. Gilbert, 227 S.C. 334, 88 S.E. (2d) 72 (1955). However, this rule does not authorize the submission of speculative, theoretical and hypothetical views to the jury. While adhering to the "scintilla" rule, our Supreme Court has repeatedly recognized another equally important rule which provides that when only one reasonable inference, not just one inference, can be deduced from the evidence, the question becomes one of law for the court. Bell v. Bank of Abbeville, 211 S.C. 167, 44 S.E. (2d) 328 (1947). Furthermore, a corollary of this rule is that verdicts may not be permitted to rest upon surmise, conjecture or speculation. Bultman v. Barber, 277 S.C. 281 S.E. (2d) 791 (1981); Tallon *533 v. Seaboard Coast Line Railroad Co., 270 S.C. 362, 242 S.E. (2d) 418 (1978); Horton v. Greyhound Corporation, 241 S.C. 430, 128 S.E. (2d) 776 (1962); McMillan v. Southern Railway-Carolina Division, 196 S.C. 373, 13 S.E. (2d) 915 (1941).
We hold that the testimony of Gosnell and Moore that they did not recall seeing the grader in the roadway, when viewed in light of the direct evidence by Gosnell's own witness, Kelly, (and other eyewitnesses) that the grader was clearly visible in the roadway and Gosnell just "plain" ran into its rear, does not give rise to a reasonable inference that the grader suddenly darted out in front of Gosnell's car. The record fails to show the facts to be other than as Gosnell's witness Kelly and the other eyewitnesses testified.
Having concluded that Gosnell was negligent, we nevertheless recognize that the inquiry of whether his negligence contributed as a proximate cause of his injury is ordinarily a matter for the jury. Grier v. Cornelius, supra. However, where the evidence regarding proximate cause of Gosnell's injuries is susceptible of only one reasonable inference, it becomes a question of law for the court. National Bank of Honea Path v. Thomas J. Barrett, Jr., and Co., 173 S.C. 1, 174 S.E. 581 (1934).
Assuming without so deciding that the Highway Department was negligent, we think that the only reasonable inference is that the immediate and efficient cause of the collision was Gosnell's improper driving conduct, without which his injuries would not have occurred. Taylor v. Bryant, 274 S.C. 509, 265 S.E. (2d) 514 (1980); Odom v. Steigerwald, 260 S.C. 422, 196 S.E. (2d) 635 (1973). By driving his vehicle directly into the rear of the grader for no apparent reason evident in the record, Gosnell proximately caused his own injuries. We therefore hold that the trial judge should have granted the Highway Department's motion for a judgment n.o.v.
The Highway Department's other exception regarding the admission of the Highway Department's traffic regulations into evidence need not be decided by us since our decision on the issue of contributory negligence effectively disposes of the case. See South Carolina Code of Laws 1976, Section 14-8-250 (1983 Cum. Supp.).
Reversed and remanded with direction that judgment be entered for the Highway Department.
*534 Reversed and remanded.
SHAW and BELL, JJ., concur.
NOTES
[1] William B. Jones, a crew supervisor for the Highway Department testified he had measured the road grader:

The cab width is 4 feet 8 inches wide; the cab height, that's the total height from the ground to the top, is 10 feet 8 inches; the full length of the machine is 20 feet 7 inches; the full top width is 8 foot (sic).