14423

HUNSUCKER v. STATE HIGHWAY DEPT.

(189 S. C., 652)

*Messrs. John M. Daniel, Attorney General J. Ivey Humphrey* and *M. J. Hough, Assistant Attorney General* and *Stevenson & Lindsay,* for appellant,

*Messrs. N. W. Edens* and *Tison & Miller* for respondent,

January 28, 1937.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The plaintiff sues to recover damages for the death of her husband, R. Knox Hunsucker, which she alleges was caused by "the negligent operation of a truck in charge of the State Highway Department, while the said vehicle was

actually engaged in the construction or repair of the said highway."

The only specification of negligence set out in the complaint is as follows:

"That * * * on the 19th day of February, 1934, R. Knox Hunsucker was riding along Highway No. 401—about five miles south of the Town of Bennettsville, when a truck engaged in the construction or repair of the said highway negligently collided with the automobile in which the said R. Knox Hunsucker was riding, inflicting upon him wounds of which he died on the 19th day of February, 1934."

The complaint contains the usual allegations that the injuries and death of Hunsucker were not brought about, nor contributed to by any negligence on his part, "nor by the negligence of any other person whomsoever, than the defendant State Highway Department of the State of South Carolina."

Claim was duly filed and payment refused.

The case was tried by Judge Dennis and a jury at the May, 1936, special term of the Court of Common Pleas for Marlboro County, and resulted in a verdict for plaintiff in the sum of $3.000.00.

At the call of the case a motion was made to quash the venire of the jurors on the ground that, "The jury tickets in the jury box do not comply with the law in that they are not folded in such a way that they cannot be read without unfolding them." The motion was overruled.

Motions for nonsuit, for directed verdict, and for new trial were made at proper times, and all of them were denied. This appeal followed and is based on twenty-two exceptions, but appellant's attorneys, in their brief, say that the issues made by them, and now to be determined by us, are comprised in four propositions, viz.:

I. The motion for nonsuit should have been granted. Exceptions 3-7, inclusive.

II. The motion by defendant for directed verdict should have been granted. Exceptions 8-14, inclusive.

III. The motion for new trial should have been allowed. Exceptions 16-22, inclusive.

IV. The venire should have been quashed. Exceptions 1 and 2.

We may consider the first three questions together since they turn upon the determination of a question embodied in all of them, viz.: Is there any evidence of actionable negligence on the part of the highway department which was the proximate cause of the injury which culminated in the death of plaintiff's intestate?

The narrative of the incidents which brought about the litigation may be thus stated: ·

R. Knox Hunsucker was traveling on highway No. 401 between Society Hill and Bennettsville at a point in Marlboro County about 5 miles south of Bennettsville. He was riding in an automobile driven by L. T. Tison, by invitation of Mr. Tison. A truck belonging to the State Highway Department, which had been engaged in repairing a bridge on the highway, and which had ceased work on account of rain, was traveling on the same highway in the same direction—toward Bennettsville—as was the car in which Mr. Tison and Mr. Hunsucker were riding. A car was in a field on the side of the highway, where it had evidently skidded. As was their duty, the occupants of the truck, who were employees of the Highway Department, stopped with the view of aiding the stalled car. The car in which Tison and Hunsucker rode was following the truck. At the time the truck stopped another car was approaching it and the Tison car, going from the direction of Bennettsville toward Society Hill. The car in which Tison and Hunsucker were riding struck the highway truck on its left rear side with the right front side of the Tison car.

The question of alleged negligence of the defendant, upon which the respondent relies to sustain the judgment it has received, is stated to be that the driver of the truck stopped it, and was backing it down the road toward the car stalled in the field, and struck the Tison-Hunsucker car and inflicted injuries from which Hunsucker died.

The pivotal question is: Did the truck back and strike the Tison car; if it did was it done negligently? Or was the truck standing still and the Tison car struck it and caused the injuries from which Hunsucker died?

When the plaintiff closed her testimony in chief, the only evidence on this vital point had been given by the witness W. P. Rogers, for plaintiff. Summarized, it is: He was at a mail box on the highway some 300 yards from where the collision occurred and on the opposite side of the road. Saw the car sitting in the field about 20 feet from the road. Saw the truck and the Tison car pass, going in the same direction, the car following the truck at a distance of about 200 or 250 yards, both traveling at about 30 miles an hour. A man was sitting in the car in the field which was facing toward the road. The truck passed the car in the field about 15 or 20 feet before it stopped. The truck stopped and started to back. Another car was coming toward Society Hill. The Hunsucker car hit the highway truck.

"Q. At that time was the truck backing? A. I don't know.

"Q. Did you see it when it started backing? A. Yes, sir.

"Q. Did you ever see it stop backing? A. No, sir. * * *

"Q. Tell the position of the other car that was going toward Society Hill at the time of the collision. A. It was not quite even with them as far as I could see.

"Q. Now you have testified that the highway truck started backing, now tell the jury in your own way what the high-

way truck was doing and what the Hunsucker car was doing at the time they got together. A. The highway truck was backing and the Hunsucker car was going forward."

This testimony was adduced on direct examination. On cross-examination this witness said: There was nothing to hinder the man who was driving the Hunsucker car from seeing the highway truck; it was straight open road and open country on both sides.

"Q. You saw the highway truck stop and start to back back? A. That is right.

"Q. Was it backing at the time the collision took place? A. *I don't know.*" (Italics added.)

Thus stood the evidence upon which plaintiff relied, at the close of her testimony, to show that defendant was guilty of negligence in operating the highway truck which was the proximate cause of the collision, which inflicted the injuries which caused the death of her intestate, and to prove that the decedent did not bring about his injuries, nor negligently contribute thereto, but that such injuries were due to the negligence of the defendant State Highway Department of South Carolina, and not by the negligence of any other person whomsoever.

A scanning and parsing of this testimony discloses acute contradictions of the witness Rogers, by himself, upon the question whether the truck was backing at the time of the collision. But, further, there is a lack of testimony from him, or any other witness on behalf of plaintiff, that if it be conceded that the truck was backing, that it was done negligently, and that that was the proximate cause of the collision. This witness repeatedly stated that the Hunsucker car ran into the truck—struck the truck from the rear. Even more significant is the fact that there is no syllable of testimony from this witness, or any other, that the decedent did not bring about his own injury, nor negligently contribute thereto.

It is fundamental that the plaintiff, in an action of this nature, must prove the material allegations of his complaint by the preponderance of his evidence. He cannot depend upon the doctrine *res ipsa loquitur;* that doctrine does not prevail in this State.

"Verdicts cannot rest upon guess or conjecture. A plaintiff must prove negligence affirmatively. * * * It is true that negligence may be established by circumstantial evidence as well as by positive evidence; but it is also a well settled precept founded upon the soundest principles of justice that a verdict must be supported by the evidence and not based upon conjejcture, speculation, and surmise." *Delk v. Liggett & Myers Tobacco Co.,* 180 S. C., 436, 445, 186 S. E., 383, 386.

"Before the plaintiff can recover he must prove by the preponderance of the evidence one or more of the specifications of negligence alleged in the complaint; and he must recover, if at all, on the material allegations of his complaint which have been proved. He will not be allowed to have judgment on mere surmise or conjecture." *Lancaster v. South Carolina Power Co.,* 181 S. C., 244, 186 S. E., 911, 913.

The allegation of negligence in the complaint is, in the general language, "a truck engaged in the construction or repair of the said highway negligently collided with the automobile in which the said R. Knox Hunsucker was riding." "The injuries and death of R. Knox Hunsucker were brought about by the negligent operation of a truck in charge of the State Highway Department while said vehicle was actually engaged in the construction or repair of the said highway."

The negligent operation of the truck relied upon, as shown by plaintiff's evidence, was that the truck stopped and backed on the highway.

The learned Circuit Judge, who tried this case said: "I am going to charge the jury that a man can stop a car on the highway, he can go forward or he can

go back, but it has got to be done with due care, and it is not negligence *per se* to stop an automobile on the public highway, or to back it, even on the paved part, if it is done with due care, any more than to go forward."

Unquestionably, that is the law and no exception to it has been taken by any one.

It is in the record that the highway truck had stopped on the right-hand side of the highway with its right wheels on the shoulder and its left wheels 18 inches on the pavement. The paved road is 20 feet in width and the shoulder 5 feet, making a total width of 30 feet. The road is straight and level at that point and you can see a parked car for four or five hundred yards each way.

Now plaintiff argues that the truck was backing, the Hunsucker car was approaching from the rear, and another car was approaching from the front and that this conjunction of vehicles caused the Hunsucker car, in an effort to pass the truck, to strike it. This is pure conjecture and surmise and plaintiff offers no word of evidence to support it.

It is the rule that a motion for the directing of a verdict shall not be made until all the evidence is in.

The theory is that the testimony for the defendant may offer something beneficial to the plaintiff of which the plaintiff is entitled to take advantage. Let us see how matters stood when the motion for directed verdict was made in this case. We have given a synopsis of the evidence offered by plaintiff, as it touched upon the question we are discussing, that for defendant is:

M. E. Padgett: Is a civil engineer engaged in road construction for State Highway Department; made a map of this road and the place of the collision as pointed out to him. The collision was in February, the map was made in September; the pavement of the road is 20 feet in width, at this point the shoulder on the right side of the road is 5½ feet wide, and approximately the same on the left, mak-

ing a total width of the road of about 30 feet. The road is flat graded through there. The road is straight at that point, on a tangent. You can see a car parked on that road four or five hundred yards.

R. H. Haley: "Am employed by the Highway Department. On the day Mr. Hunsucker was killed we had been working on bridges; knocked off on account of rain and were coming in; came to point where car had skidded off the pavement out into field; we pulled up ahead of the car and stopped; my foreman told me to back up and see what the trouble was. I said: 'Wait a minute till that car gets by.' I saw it coming up through the mirror; we sat there; the one in front passed the one behind some distance. I saw in the mirror the man behind was going to hit us; we sat still; I watched through the glass, he got in about 10 feet of us and turned for the center of the road, but was too close to miss us at the speed he was going. We stopped about 121 feet from the car in the field. We made measurements of the exact distances. We stopped; were figuring on backing to help him; that was our duty. The measurement shows we stopped 18 inches on pavement. The car coming from Bennettsville was about six or seven hundred feet from us when I first saw it; I estimate it was traveling about 35 miles, maybe 40 miles an hour. When I first saw the car that struck us, it was probably 1,600 or 1,800 feet from us; Mr. Mudd and a colored man, Sol Parker, were in the truck with me. Mr. Mudd is my foreman. We were sitting there when the Hunsucker car hit us—he struck the left-hand board on the left-hand side; the right-hand door, the front door, of his car hit us. It knocked the body of our car back on the frame and knocked the front part in the ditch. The car from Bennettsville and the Hunsucker car passed each other more than 200 feet from us, when they passed each other."

Sol Parker: "Employed by Highway Department. Was on truck when accident took place; truck was parked over to

the right as far as we could get; lacked about 18 inches of being off the pavement; the left-hand wheels were on the pavement. Truck was 121 feet from car in field when it stopped. The truck was sitting still when it was hit by the car; saw the car coming from Bennettsville, it had passed our truck before the other car hit us."

S. A. Mudd: "Was working for the Highway Department and was in the truck when the collision took place; saw the car in the field. I told Mr. Haley to stop the truck and find out what was the matter. When he stopped, I said back up against the car so we can see if we can help him. He said, 'There is a car coming in front, wait a minute.' He looked in the mirror and saw car coming behind us; we sat there and the car coming in front passed, and the next thing I knew the car coming behind hit us. The car in the field was headed toward the road. The driver of that car was in the seat when the accident happened."

The same witness on cross-examination: The driver of the truck said "Whoa" about the time the car hit him. I saw the car coming from Bennettsville after we stopped.

R. B. Thomas: "Am superintendent of maintenance for the State Highway Department in Marlboro County. Made measurements that afternoon. There was a farm road just beyond where Mr. Pope skidded off the highway, we measured from there to where the truck stopped; it was 200 feet. It was 79 feet from this road to where Mr. Pope's car was, 121 feet from Pope's car to where the truck was, 48 feet from the truck to where Mr. Tison's car stopped after the wreck; it went around the truck and 48 feet up the road and stopped; the place where it stopped was indicated where the brakes were applied and the rubber blackened the pavement. Heard part of Mr. Roger's testimony. The mail box is 1,470 feet from where the truck was hit. The road is straight there; from where the truck was hit it is straight back 1,800 feet."

A. D. Pope: "Lives at Little Rock in Dillon County. Merchant and farmer; was mayor of town for 15 years; was driving car that skidded into field off highway; went about 15 feet off highway; had sent to town to get some one to pull me out; before he got there the highway truck came along, went some 25 or 30 yards past me and stopped, in the meantime I saw a car approaching from Bennettsville going toward the river; I had my mind on the highway truck; meantime a car was approaching from the river, and when I looked at the highway these men were looking at me, they were in plain view and as far as I could see them they were looking at me; they ran into the back of this highway truck. The truck was standing, I believe; if it had been moving I could have told it. Very little of the truck was on the pavement, most of it was on the shoulder."

On cross-examination: "Did the men turn around in their seats or turn their heads toward you? They just turned their heads."

There was no reply by the plaintiff to this testimony.

If it be said that there was a scintilla of evidence adduced by the plaintiff in chief sufficient to send the case to the jury, which is not admitted, we apply another rule which is stated by this Court in *National Bank v. Thomas J. Barrett, Jr. & Co.*, 173 S. C., 1, 174 S. E., 581, 582, in these words:

"If it be conceded that there may be deduced by a process of unusual finesse of reasoning that there is a scintilla of evidence, * * * nevertheless there is another rule, more founded upon common sense and reason, to the effect that when only one reasonable inference, not just one inference, but one reasonable inference, can be deduced from the evidence, it becomes a question of law for the Court, and not a question of fact for the jury."

This rule has been several times affirmed by the Court.

In *Turner v. American Motorists Ins. Co.*, 176 S. C., 260, 180 S. E., 55, this Court said quoting syllabus 3: "scintilla

of evidence on which case should be sent to jury must be real, material, pertinent, and relevant evidence, and not speculative and theoretical deductions."

The trial Judge correctly held, and charged, that ■ Hunsucker could not be charged with the negligence of Tison, the driver of the car, and with such holding and charge there is no contention. But it does not follow that Hunsucker would not be responsible for his own negligence and want of care, if it contributed as a proximate cause to the collision which caused the injuries from which he died. It is conceded that he was a guest in Tison's car, nevertheless it was incumbent on him to keep a proper look out and have a proper care for his own safety. If Tison did not keep such look out and, hence, did not see the truck until he was on it and it was too late to avoid striking it, if by keeping such look out, Hunsucker could and would have seen the truck in time to warn Tison, it was negligence for him not to do so. But the crux of the situation is that while it is true that Tison's negligence may not be imputed to Hunsucker, it is equally true that it may not be imputed to the driver of the truck. Mr. Pope testifies that both the occupants of the Tison car were looking at him where he sat in his car in the field, and continued to look at him as they passed. It is an inescapable conclusion that they did not see the truck until they were too close upon it to get around it and, hence, crashed into it.

The motion for directed verdict for the defendant ■ should have been granted.

The exception relating to the motion to quash the venire of jurors is not supported in the record by such sufficient statement of facts as would justify us in reversing the order of the trial Judge thereabout.

It is opportune, however, for the Court to say that those charged with the duty of administering the laws relating to jurors cannot be too careful in following the exact provisions of the acts. A slight deviation therefrom, which to

such officers seems an immaterial thing, might prove to be a vital one and might seriously affect the life, liberty, or property rights of citizens.

The judgment of the lower Court, except as to such order, is reversed. Let the case be remanded to the Circuit Court with direction to enter judgment for the defendant.

Mr. Chief Justice Stabler and Messrs. Justices Baker and Fishburne concur.

Mr. Justice Carter dissents.