14500

## McCABE v. SLOAN

(191 S. E., 905)

April, 1936,

January, 1937.

*Messrs. Tobias & Turner,* for appellant, cite:

*Messrs. John Hughes Cooper* and *Edwin H. Cooper,* for respondent, cite:

June 15, 1937.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

This action was brought against Harry Sloan, South Carolina Highway Department, and Highway Patrol Motorcycle No. 100. Upon a demurrer to the complaint the two last-named defendants were eliminated from the action.

The case was tried by his Honor, Judge Shipp, with a jury at Spring, 1936, term of the Court of Common Pleas for Richland County. The jury found for plaintiff.

The action was one for damages which, it is alleged, were received by plaintiff when struck by a motorcycle which was ridden by defendant.

Motions for nonsuit, directed verdict, and new trial were made at proper times and all of them denied.

Notice of intention to appeal was given, and before the time to perfect the appeal had expired, defendant gave notice of a motion for new trial based on after-discovered evidence. Thereupon Judge Shipp granted an order extending the time for the defendant to perfect his appeal, until this motion was heard. By consent of counsel the motion for new trial on after-discovered evidence was heard by Judge Ramage, then presiding in the Fifth Circuit. He filed a short order denying the motion.

Whereupon the defendant gave further notice of intention to appeal from the judgment entered on the verdict in the case and from the order of Judge Ramage. These matters were heard together in this Court.

It is not necessary to set out the pleadings. They may be summarized in this way:

Plaintiff alleges that he was crossing Sumter Street, Columbia, S. C., going eastward; that he had reached nearly to the northeastern intersection of that street with Hampton Avenue, when he was struck by a motorcycle operated by defendant at a dangerous and unlawful speed, and in violation of the city ordinances and the statutes of South Carolina; that he suffered serious and permanent injuries.

For answer, the defendant sets up a general denial, and, further, that while he was driving his motorcycle in a careful and lawful manner, he observed plaintiff crossing Sumter Street, going east and near the intersection of Hampton Avenue on its north side; that plaintiff was accompanied by several dogs which were under his direction and control; that as defendant had almost reached this point of intersection, one of the dogs darted out into Sumter Street in the path of defendant on the motorcycle causing defendant to be thrown therefrom; that plaintiff darted back into Sumter Street in the path of the motorcycle, with which he collided. He pleads plaintiff's negligence, and willfulness and recklessness, and plaintiff's contributory negligence, willfullness and recklessness.

Appellant's counsel state in their brief that the exceptions raise three questions:

"1. Should the trial Judge have granted the Defendant's motions for nonsuit and for directed verdict?

"2. Should the trial Judge have required the Defendant to assume the burden of proof with regard to the defense of intervening or independent cause?

"3. Should the Defendant's motion for new trial on after-discovered evidence have been granted?"

Our conception of the serious question involved in this appeal makes it inexpedient to discuss in detail the issue propounded by the first question. It is sufficient to say here that

there was evidence which made it the duty of the trial Judge to send the case to the jury.

It seems unnecessary to cite authorities in support of the postulate that when one pleads an affirmative defense, the burden is on him to prove it. See *Jackson v. Frier,* 146 S. C., 322, 144 S. E., 66; *Lorick & Lowrance v. Julius H. Walker & Co.,* 153 S. C., 309, 150 S. E., 789.

Unquestionably, defendant's plea that the dog ran out in front of and against his motorcycle and caused the collision with plaintiff, and without which it would not have happened, is an affirmative defense; it sets up a defense designed to disprove the plea of plaintiff that defendant's alleged negligence was the proximate—the direct cause of the collision. The defendant pleaded an independent, intervening cause. It was incumbent on him to prove it.

The issue which gives us concern and thought is made by the third question, viz.: "Should defendant's motion for new trial based on the ground of after-discovered evidence have been granted?"

This motion was not heard by Judge Shipp, who tried the case. Judge Ramage, who heard it, could not have been fully advised of the facts which appear in the record. In his short order refusing the motion, he said: "In many of the cases the 'evidence' was documentary and of a conclusive character. I refer to C. J. and also R. C. L. on 'New Trials'. As a rule, where the evidence is cumulative no new trial is granted, though there are exceptions."

It would appear then that the main ground upon which he bases his denial of the motion is that the evidence offered by the movant is cumulative.

It may be conceded that motions based upon the ground of newly discovered evidence are not as a rule favored by the Court; but it is not to be inferred that the Courts will not, on a sufficient showing, grant such motion.

And it may be conceded that such motions are addressed to the sound discretion of the Judge who hears them; but it does not follow that if the Judge erroneously exercises his discretion, the appellate Court may not review his action.

The cardinal question in this case is: What occurred at the instant of the contact of the motorcycle with the plaintiff?

The plaintiff gives his version of the occurrence, and the defendant gives his. The plaintiff states that he saw the defendant approaching on his motorcycle when he was 200 feet away; that he saw him jump or fall from it when about 30 feet away; that he has no knowledge of what occurred immediately thereafter. The defendant states that when he was near the plaintiff the white dog ran out in front of and against the motorcycle, which caused him to be thrown from it, and the machine struck the plaintiff.

For the plaintiff four witnesses testified, but not one of them saw the occurrence at the time of the impact of the machine and Mr. McCabe.

J. W. Leaphart saw some one lying on the ground and a white dog on the curb when he got there.

J. H. Hightower, policeman, was at corner a block away when the collision occurred.

J. L. Reid, Jr., was changing a tire on his car in his garage on the southwest corner of Sumter Street and Hampton Avenue; attention attracted by skidding; saw some commotion at northeast corner of Sumter Street where it intersects Hampton Avenue, and went over there.

W. S. Fulmer. Was coming south on Sumter Street, north of Hampton Avenue; saw something white roll out into street; it was a dog; passed first the dog, then the motorcycle, then Mr. McCabe.

For the defendant one witness, H. E. Epting, testified. Was at Reid's Filling Station, southwest corner of Sumter Street and Hampton Avenue; first thing he knew was when

the motorcycle hit a white object and skidded down the street; rushed over and found that it was a man and a dog. The object in contact with the motorcycle was a dog. Gives no testimony regarding the immediate occurrences preceding his seeing the motorcycle strike the dog.

Here, then, is an impasse, a blind alley. No one save plaintiff and defendant were present when the collision occurred. The plaintiff frankly testifies: "This motorcycle, at a very high speed was coming, and all I remember was seeing someone jump off the motorcycle, but after that I don't remember anything else that happened."

It is essential to a full understanding and a just decision of this unfortunate occurrence, in which a good man has been grievously injured, to know which of two diametrically opposing statements is correct.

Was the motorcycle moving at an excessive rate of speed, and did the rider of it jump, or fall from it at a distance of about 30 feet from plaintiff, and the machine then skidded and struck plaintiff and the dog? Or, did the dog run out against the motorcycle and cause the defendant to be thrown therefrom and the machine skidded and struck plaintiff? Defendant claims that the action of the dog in running into the motorcycle was the independent, intervening proximate cause of the collision, which relieves him of liability.

Here is the hiatus in the evidence as shown by the record.

The defendant comes forward now in his motion for a new trial on the ground that since the trial an eyewitness to the collision has been found whose testimony supplies that which is lacking.

As hereinabove stated, Judge Ramage denied the motion apparently for the reason that he considered the testimony cumulative.

"In order to warrant the granting of a new trial on the ground of newly discovered evidence, it must appear, (1) that the evidence is such as will probably change the result, if a new trial is granted. (2) That it has

been discovered since the trial. (3) That it could not have been discovered before the trial by the exercise of due diligence. (4) That it is material to the issue. (5) That it is not merely cumulative or impeaching." 20 R. C. L., 290, § 72.

It will be conceded that this is the rule approved in this jurisdiction. Does the showing made by the movant in this case measure up to the requirements of this rule? It is significant that counsel for respondent offer no affidavits in rebuttal or contradiction of those submitted by appellant.

The attorneys of appellant, reputable members of the bar, set forth in detail the efforts they made before the case came to trial to ascertain if any one had seen this occurrence and could testify to what occurred. That they made repeated and persistent inquiries of persons in the vicinity of the place of the accident. That they examined the hospital records, examined the place of the collision and did all in their power with the utmost diligence to get all possible information on the subject. They submit with their affidavits that of the defendant to the effect that until after the trial he had no knowledge nor intimation that Lewie R. Hope knew anything concerning the occurrence. They submit also the affidavit of Lewie R. Hope. It is to the effect that he has for some years been connected with the South Carolina Highway Commission; that he did not inform the defendant or his counsel that he was an eyewitness to this occurrence until after the trial for the reason that he did not know that such a case was pending until he saw in the newspapers, about the 3d or 4th of April, 1936, that such a case had been tried. Finding upon inquiry who the parties to the suit were, he informed Mr. Nat Turner, one of defendant's attorneys, that he had been an eyewitness to the occurrence on the night of November 27, 1934. From the time of the occurrence until he saw an account of the trial in the papers, he had no knowledge that any proceedings were pending.

It would seem clear that due diligence had been used by defendant's attorneys to obtain all available testimony for

the trial of their case. Lewie R. Hope's reason for not having told any one of what he saw of the occurrence is entirely reasonable and sound. He was then in the employ of the State Highway Commission, which was made a party defendant to the action. Does it not stand to reason that if Hope knew this fact and was in possession of evidence which would tend to exculpate the department and another employee of the department, that he would have made known the fact that he had knowledge of facts of prime importance to them? He states further that the reason he did not know of any pending proceedings growing out of the accident was because he did not think that Sloan was responsible for the accident and it did not occur to him that anything would grow out of it.

Is this evidence material? Is it probable that it would change the verdict if a new trial were granted? The affiant states under oath that he was travelling behind Sloan, going north, on Sumter Street; that as witness approached the intersection of Sumter Street and Hampton Avenue Sloan was about 50 or 60 feet in front of him; a man was crossing eastward on Sumter Street to its northeastern intersection with Hampton Avenue, accompanied by two dogs which he held on leashes; when the man was about six or eight feet from the eastern curb of Sumter Street, one of the dogs—a white dog—turned and dashed towards the motorcycle upon which Sloan was riding. The man holding the dog turned with the dog, facing to the west in an apparent effort to pull the dog; the dog dashed into the right side of the front wheel of the motorcycle; Sloan was thrown off in a sort of spraddling or diving position; the motorcycle continued on and struck the man, who, as the dog dashed into the motorcycle, turned and was facing the motorcycle.

Here is the testimony which fills the hiatus as to the occurrence at the very moment of the impact.

We are of the opinion that it would impress any fair and impartial jury, or, as Judge Blease said, "Any reasonable

mind," and would probably affect their judgment. It is not for this Court to decide whether it is true. It stands before the Court unimpeached. The respondent offers no affidavit in reply to it.

We think the first four conditions necessary to the granting of a new trial on after-discovered evidence have been met. (1) That the evidence would probably change the result. (2) That it has been discovered since the trial. (3) That it could not have been discovered before the trial by the exercise of due diligence. (4) That it is material to the issue. The fifth ground is that it must not be cumulative or impeaching.

Judge Ramage, by implication, held it to be cumulative. He did not specifically state any other ground, except by reference.

From 20 R. C. L., 297, § 79, under the head of New Trial, we take the following: "79. *What Constitutes Cumulative Evidence.*—Cumulative evidence has been tersely defined as additional evidence of the same kind to the same point. It is apparent that there is a wide difference in meaning between the terms 'of the same kind' and 'to the same point', as used in the various definitions. Newly discovered evidence, to be cumulative, must not only tend to prove facts which were in evidence at the trial, but must be of the same kind of evidence as that produced at the trial to prove those facts. If it is of a different kind, though upon the same issue, or of the same kind on a different issue, it is not cumulative. Nor is evidence cumulative in the legal sense which, while tending to establish the same general result, does it by proof of a new and distinct fact. To render evidence subject to the objection that it is cumulative, in the legal sense, it must be cumulative, not with respect to the main issue between the parties, but on some collateral or subordinate fact bearing on that issue. * * * Newly discovered evidence raising a new ground of claim or defense is, of course, not cumulative, nor is evidence explaining an apparent conflict in or contradicting, evidence offered at the

trial. Newly discovered evidence of admissions has been held not to be cumulative to evidence of facts and circumstances."

From Section 72 of the same authority this is taken: "As a general rule a new trial will not be granted on account of the discovery of facts and circumstances merely cumulative in their character. The reason of the rule is that public policy, looking to the finality of trials, requires that the parties be held to diligence in preparing their cases for trial, and it is not, strictly speaking, an independent rule, but a mere corollary of the requirement that the newly discovered evidence must be such as to render a different result probable on a retrial of the case. The rule must, however, be taken in its proper sense, and is not to be understood as precluding a new trial in every case, where the new testimony relates to a point contested on the former trial; for if it were so a new trial could seldom, if ever, be granted in any case."

In the light of these established rules we are led to the conclusion that the learned Judge, who heard the motion in this case, committed error of law when he refused the motion.

No solitary witness for plaintiff saw the motorcycle strike plaintiff. No witness for the defendant saw the impact. The defendant now asks leave to present in a new trial a witness who makes affidavit that he saw the actual contact of the motorcycle, the man and the dog. As the case must go back for trial, we refrain from discussing the proposed evidence in relation to the all-important question: Did the white dog run out and into the motorcycle and cause defendant to fall therefrom? It is sufficient to say that the newly discovered evidence is material and not cumulative.

In the case of *Williamson v. Pike,* 140 S. C., 376, 138 S. E., 831, 834, this Court reviewed the case of *State v. Tripp,* 133 S. C., 294, 130 S. E., 888, it said: "In the *Tripp Case,* on motion for a new trial, the circuit judge refused to consider affidavits, and this court held that therein he committed

error. It was held in that case, however, that a motion for a new trial on after-discovered evidence is addressed to the discretion of the circuit court, and refusal of the motion will not be reviewed unless there was an abuse of discretion, *or if the exercise of that discretion was controlled by some error of law. It was further decided that the circuit court should grant a new trial if affidavits filed would lead any reasonable mind to the inference that the newly discovered evidence would probably change the result of the cause."* (Italics added.)

The motion in the *Williamson v. Pike Case* was denied because the record showed that due diligence had not been used and the proposed new evidence was not material.

In the case of *Edwards v. Cottingham,* 171 S. C., 131, 171 S. E., 621. 622, the Circuit Judge refused a motion for new trial based on after-discovered evidence. This Court sustained his action, saying: "We have carefully read the affidavits upon which the motion was predicated, and we concur with the Circuit Judge that they do not warrant setting aside the verdict and granting a new trial. With due diligence this after-discovered evidence could have been found two days before the trial as easily as it was found two days thereafter."

In the case of *Prudential Ins. Co. v. Reynolds et al.,* 174 S. C., 547, 177 S. E., 889, the facts succinctly stated were these: It was an action for foreclosure, H. R. Reynolds, a defendant, defended on the ground that under compulsion by his father, he was compelled, while he was a minor, to execute and deliver to his father a deed to his interests in the premises. The case was heard by Judge Shipp, who modified the Master's report, which recommended foreclosure, by saving H. R. Reynolds' claimed interest in the premises. From an order denying a motion for new trial on after-discovered evidence, there was an appeal. The matter turned on the question of H. R. Reynolds' minority when he signed the deed to his father December 1, 1923.

The affidavits in support of the motion were made first by J. P. McNeill, Jr., who in substance deposed that he inspected the premises for the loan, a young man showed them the lines and gave them information regarding the lands of his father. He knew the inspection was for the purpose of making a loan. That as attorney for plaintiff, before the first reference, deponent spent considerable time trying to get some one to testify as to the age of H. R. Reynolds; that a number of men approached did not know his age, a reputable lawyer stated as his opinion that he was under 21 years of age when he executed the deed; that deponent did not testify to such inspection tour, because he was reluctant to do so, being one of plaintiff's attorneys.

W. Stokes Houck, attorney, deposed that the records of the State Highway Department showed that in December, 1930, Heyward Reynolds obtained a driver's license on an affidavit dated December 15, 1930, in which he gave his age as 28, and in 1933 he obtained another on an application dated July 19, 1933, giving his age as 31.

An affidavit by J. D. McInnis is to the effect that he is 29 years old; that he went to school with Heyward Reynolds, who was two grades or more advanced than he; that Reynolds was much larger and more mature than he, and in his opinion was at least two years older than he.

J. P. McNeill, Jr., by further affidavit deposed that the evidence by which plaintiff was seeking a new trial had been discovered in the past two weeks and was not within the knowledge of deponent or any one connected with the plaintiff until about two weeks before the making of the affidavit.

Counter affidavits for defendant were, in substance, by Alice Slade showing that the records of the State Highway Department did not always disclose the exact age of the applicants for license.

Affidavits by Heyward Reynolds that when he applied for a driver's license in December, 1930, he was going into his 28th year, his birthday was September 23. That in preparing

the application for license in 1933, a garage man helped him and arrived at the age stated by adding three years to that stated in the 1930 application. That these applications were on file in the State Highway Department when the reference was held.

The affidavit of Preston B. Thames, attorney, is to the effect that applicants for driver's licenses had given incorrect ages, some through inadvertence or mistake, some intentionally.

As stated, Judge Stoll refused the motion. The opinion of this Court, on appeal, was given by Judge Ramage, Acting Associate Justice, in which he said: "It appears to the Court, and we so hold, that Judge Stoll was in error in not granting the motion for new trial on after-discovered evidence. As the case will have to be tried again, we prefer not to discuss the details of the testimony so as not to hamper the parties in the subsequent conduct of the case."

A comparison of the affidavits submitted in support of the motion made in the present case with those submitted in the *Prudential Ins. Co. v. Reynolds Case* above, will demonstrate that the showing thereby made in the former case is far stronger in all essential particulars than that made in the latter case. In the former there were no countervailing affidavits; in the latter there were such affidavits.

It is the judgment of this Court that the judgment of the lower Court be reversed and the case remanded to the Circuit Court for retrial.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BAKER and FISHBURNE concur.