## 15662

*IN RE* CRAWFORD:
CRAWFORD *ET AL.* v. TOWN OF WINNSBORO *ET AL.*
(80 S. E. (2d), 841)

*Messrs. Wise & Whaley,* of Columbia, S. C., and *Mr. T. K. McDonald,* of Winnsboro, S. C., Counsel for Appellants,

*Mr. C. T. Graydon* and *Mr. F. Ehrlich Thomson,* of Columbia, S. C., and *Mr. J. Albert Merritt, Jr.,* of West Co-

lumbia, Counsel for Respondents,

July 14, 1944.

MR. CHIEF JUSTICE BAKER delivered the Opinion of the Court:

George Crawford, deceased, a policeman of the Town of Winnsboro, was found dead in the town police station at about 11 o'clock on the night of February 15, 1941, at which hour, according to his schedule of employment, he was understood to be engaged in the performance of his duties. In February, 1942 (nearly a year later), the respondents for

the first time presented to the South Carolina Industrial Commission a claim for compensation for Crawford's death under the Workmen's Compensation Act. The matter was heard before Commissioner Hyatt who, after holding three hearings, on June 17, 1942, made an award in favor of the claimants. From this award the employer and its insurer, appellants, appealed to the full Commission. Six successive dates of hearing beginning in July, 1942, were designated by the Commission, the hearing being continued each time at the instance of the respondents. The appeal was finally argued before the Commission on December 17, 1942. On January 15, 1943, a majority of the Commission, in an opinion written by Honorable John M. Wise, Chairman, reversed the hearing Commissioner and denied the claim for compensation, on the ground that the decedent had committed suicide. By letter, and subsequently by petition, both addressed to the Commission, the respondents asked for a rehearing of the case and for permission to supplement the evidence by additional testimony. This application was in due course granted, and the case was referred back to the hearing Commissioner to take additional testimony. Thereafter, but in due time, the respondents gave due notice of intention to appeal to the Circuit Court, but in said notice expressly reserved their rights under the order granting a rehearing.

Pursuant to the order granting a rehearing, additional testimony was taken before the hearing Commissioner, whereupon, on June 14, 1943, the full Commission (the membership of which had changed in part in the meanwhile) set aside the award and opinion made and filed January 15, 1943, and reinstated the award of compensation made in the first instance by the hearing Commissioner.

The appellants then appealed to the Circuit Court from the June 14, 1943, order of the Commission confirming the award of compensation. The matter came up for hearing in

the Circuit Court before Honorable A. L. Gaston, resident Judge of the Sixth Circuit, who heard arguments on numerous exceptions supporting the appeals above referred to. The conclusions reached by Judge Gaston, as far as pertinent in the present appeal, are: (1) The opinion of the Commission by Honorable John M. Wise, refusing compensation on the ground that the decedent died as the result of "willful suicide", was amply supported by the testimony, and that therefore except for subsequent proceedings in the cause, the same would not be disturbed; (2) that it was within the power of the full Commission to grant a rehearing, and that having done so, the Commission had power to reconsider the case in the light of the additional testimony taken and make a new and different award; (3) that the second award made by the full Commission, granting compensation to the respondents, had sufficient support in the testimony and should therefore be sustained.

The case comes before this Court on twenty-seven exceptions, which the appellants have reduced to six stated "Questions Involved." However, the only questions necessary to be considered in the disposition of the present appeal are those numbered 1, 2, 3, and 5.

Questions 3 and 5 are stated as follows: "3. Is the Industrial Commission authorized or empowered to grant a re-hearing or to admit additional evidence in a case after the Full Commission has rendered an Opinion and Award adjudicating the case on the facts?"

"5. Did respondents' motion for a new trial, or for a rehearing and the introduction of further evidence, meet the requirements, necessary for such a motion, in force and effect in South Carolina?"

In logical order these issues should be disposed of first.

If the Industrial Commission has the power, as asserted by respondents, to grant a rehearing after an opinion and

award has been filed by the full Commission, and on the basis of the testimony taken upon such rehearing, reverse its conclusions in a new opinion and award, such power must be found expressed in the Workmen's Compensation Act, or, if not there expressed, must be held to constitute an implied power arising out of the judicial functions of the Commission. If the power is held to be an implied power, it would then of course have to be exercised in conformity with the rules of procedure laid down for the exercise by courts generally of the implied power to grant new trials on the ground of after-discovered evidence. To imply the existence of such a power on any other basis would be productive of never-ending uncertainty as to the conclusiveness of an award made by the Commission.

Dealing first with the question whether the power is granted by any provision of the Workmen's Compensation Act, we find, as stated in appellants' brief, that the only Sections of the Act which have any possible relevance to the subject are those numbered in the Code of 1942 as Sections 7035-49, 7035-62, and 7035-63.

Section 7035-49 by its express terms permits and authorizes the review of an award only on the ground of "a change in condition," and empowers the Commission to make an award "ending, diminishing, or increasing the compensation previously awarded," so obviously this section is not apposite to the facts of this case.

Section 7035-62 providing for a review of the award by the Commission, "and, if good grounds be shown therefor, reconsider the evidence, receive further evidence, rehear the parties or their representatives, and, if proper, amend the award," of course has reference to a review of the award of the hearing Commissioner, and has no relation to a rehearing, a new trial or the introduction of further evidence following action of the full Commission after a review of the award of the hearing Commissioner.

Section 7035-63 provides for an appeal, after the award of the full Commission, from such award, to the Court of Common Pleas, for errors of law, but contains no authority for the full Commission to grant a hearing or receive further evidence following its opinion and award on a review of the hearing Commissioner's award.

In *Riddle v. Fairforest Finishing Co. et al.,* 198 S. C., 419, 18 S. E. (2d), 341, 343, it is said:

"The clear intent of this whole Act is to provide a right of appeal, and the machinery for perfecting that appeal is found in Sections 59 and 60 of the Act. (These Sections appear in the Code, as Sections 7035-62 and 7035-63).

"Clearly, it was the intent of the Legislature to provide that the procedure should be akin to that of a Court, as for instance, an appeal from an inferior Court to the Court of Common Pleas, and an appeal from that Court to the Supreme Court.

\* \* \* \*

"Thus, it seems to us made plain, that the intention of the Legislature was to provide for the disposition of a claim made to the Industrial Commission by the orderly process of a hearing before a Single Commissioner, or a deputy appointed by the Full Commission; a review, by the Full Commission, of the Single Commissioner's award; and appeal from an award by the Full Commission to the Court of Common Pleas; and an appeal from the Court of Common Pleas to the Supreme Court."

And in *McDonald et al. v. Palmetto Theatres et al.,* 196 S. C., 38, 11 S. E. (2d), 444, 448, the Court quotes with approval from 71 C. J., 1205, the following: " ' \* \* \* Where the compensation act provides for the review of the decisions of a compensation commission, such review may be limited by the express terms of the compensation act itself or by necessary implication; and where the compensation act prescribes a particular method for the review of the

orders or decrees of compensation commissions, that method may be the exclusive method of review.' "

Turning to the rules of the South Carolina Industrial Commission, we find that Rule No. 16 provides for the taking of additional testimony "when, in the discretion of the Commission, additional evidence is necessary for the completion of the record in a case of review   *   *   *." In such a case the Commission may order the taking of the additional testimony before one Commissioner. This rule then goes on to impose in substance and in detail, the identical prerequisites which govern the granting of a new trial by courts of general jurisdiction. The language of the rule proceeds as follows: "When either the employer or employee seeks to introduce new evidence at a review, application must be made for the introduction of new evidence; such application must be in writing and filed with the Commission and a copy with accompanying affidavits furnished the opposite side, and it must be shown that the new evidence is of such a character as would follow the common law governing the admission of newly discovered evidence in the application for a new trial. The evidence sought to be introduced must not be evidence of cumulative or impeaching character, but must be of such a character as likely would have produced a different result had the evidence been procurable at the first hearing. It must be shown that the evidence was not known to the party who desires to introduce same at the time of the hearing before the Commissioner, and that by reasonable diligence this new evidence could not have been secured, and that the discovery of such new evidence was brought to the attention of the Commission immediately after its discovery. *In other words, the law of South Carolina as to the nature and character of evidence required for the granting of new trials, will be applied by the South Carolina Industrial Commission before new evidence can be introduced in a review by the full Commission   *   *   *.*" (Emphasis added.)

The requirements of this rule may be compared with the requirements of the granting of a new trial in a common-law court on the ground of after-discovered testimony, as quoted from 20 R. C. L., 290, in *McCabe v. Sloan*, 184 S. C., 158, 191 S. E., 905, 908, as follows: " 'In order to warrant the granting of a new trial on the ground of newly discovered evidence, it must appear, (1) that the evidence is such as will probably change the result, if a new trial is granted. (2) That it has been discovered since the trial. (3) That it could not have been discovered before the trial by the exercise of due diligence. (4) That it is material to the issue. (5) That it is not merely cumulative or impeaching.' "

In view of the absence of any statutory authority for the granting of a rehearing by the Commission under the circumstances pertinent here, and of the above quoted language limiting the character of situation in which Rule 16 purports to provide for the introduction of additional testimony, we don't think that the rule in question is at all applicable to the question now under discussion. Without, however, deciding this issue, and without passing upon the question whether there is any implied power in the South Carolina Industrial Commission to grant a rehearing and to reverse an award of the full Commission on the testimony taken at such rehearing, we hold that the additional testimony adduced at the rehearing granted in the present case does not comply with the requisites of Rule 16 of the Commission, or with the similar requirements which govern the granting of a new trial by a court of general jurisdiction on after-discovered evidence.

The petition upon which a rehearing was granted by the Industrial Commission, and additional testimony taken on behalf of respondents, is signed by Honorable C. T. Graydon, "Petitioner, Attorney for Claimants," and Honorable F. Ehrlich Thomson, "Of Counsel," the pertinent portion of which is as follows:

"1. That he is the substituted attorney for the Claimants above named and that he has taken the place of Norbert A. Theodore, Esq., who is now a member of the Armed Forces and that your petitioner had no connection with the case whatsoever until the latter part of November or the first part of December, 1942.

"2. That your petitioner did read the evidence in the case but was not thoroughly familiar with the same at the time of the argument on the 17th of December, 1942, and upon further investigation finds that the evidence is incomplete in many particulars and that the same can be supplemented with testimony materially affecting the issue, among said issues and testimony which can be explained or contradicted is:

"(a) The testimony of Dr. C. Fred Williams as to the natural tendency of families with reference to suicide;

"(b) That many of the habits and customs of the deceased were not testified to by his wife and family which would shed material and positive light upon the matter;

"(c) That other witnesses, deponent is informed and believes, from Winnsboro can give also material testimony as to pertinent and persuasive facts."

The portion of the petition not set forth above alleges that at the time of the rendition of the opinion by the first full Commission, which disallowed compensation to claimants (respondents), "the Commission was not legally constituted." An attack was made on the eligibility of Honorable Coleman C. Martin and Honorable W. B. Todd, then acting as members of the Industrial Commission. This matter is not now before the Court, Judge Gaston having decided that Messrs. Martin and Todd were at least *de facto* members, and there is no appeal from such holding. The remaining unreported portion of the petition is merely "filling."

It was stated in oral argument of this case that Honorable J. Albert Merritt, Jr., of counsel for respondents, has been connected with the case from its inception.

We think it is so obvious that the allegations of the petition do not come within the rule for granting a new trial on after-discovered evidence as laid down in *McCabe v. Sloan, supra,* that we do not feel called upon to point out their feebleness or their lack of compliance with the rule. The additional testimony taken following the granting of the rehearing demonstrates that the able and conscientious substituted counsel for respondents, persevering though they are, were unwilling to include in the petition for a rehearing and the taking of additional testimony, unwarranted statements of after-discovered evidence, and for this they are to be commended. As a consequence, notwithstanding their great sympathy for the claimants, which this Court shares, they were unable to bring the petition within the rule as to the granting of a new trial on after-discovered evidence.

While the conclusions above stated are determinative of this appeal, and require the reversal of the order of the Circuit Court upholding the award of the full Commission in favor of the claimants made after the granting of a rehearing, we have carefully reviewed the testimony upon which the successive awards by the full Commission were made, and it is only fair to the original counsel for the claimants, as well as to the new counsel who took the place of one of the attorneys originally employed, to state that we are satisfied that the first order made by the full Commission denying a recovery by the claimants, and the portion of the order of the Circuit Court which accords with such action of the Commission, state the only conclusion which is supportable by the testimony. And in our opinion the additional testimony proffered upon the granting of the order for a rehearing effected no change in the situation, and did not warrant a reversal of the Commission's ruling as was first made. In other words, we are of the opinion that the only reasonable conclusion deducible from all of the testimony produced by the claimants is that the decedent came to his death as the result of an intentional act of self-destruc-

tion, and not as the result of an accident to or of an unlawful assault upon the decedent. This is the subject matter of appellants' "Questions Involved" numbered 1 and 2.

It is true, as contended by the respondents, that in the prosecution of this case the claimants were aided in the first instance by the legal presumption that the decedent did not commit suicide, and by the further presumption (under the circumstances of this case) that the act which produced his death arose out of and in the course of his employment. These presumptions, however, are presumptions of law. In the absence of testimony from which a conclusion could be reached independently of such presumptions, the claimants would be entitled to recover. But that is not the character of case with which we are dealing.

The facts of the case are fully stated in the opinion and award made by the full Commission on January 15, 1943. This statement, changed by us to include certain relevant facts adduced after the granting of the order for a rehearing, is as follows:

The claimants' intestate was last seen alive by his wife at 7:30 p. m., on February 15, 1941, as he left his home to report for duty at 8 o'clock as policeman for the City of Winnsboro. There is no testimony that he ever reported to anyone for duty. The acting Chief of Police McFie testified that he did not see him on duty that night.

His dead body was found in the City Hall building of Winnsboro, South Carolina (wherein the police station was located), which was about three and one-half or four blocks from his home, just before 11. o'clock p. m., of the same day, and according to the testimony of Dr. J. E. Douglas who saw the body shortly after it was found he had been dead about an hour. He was lying on the floor flat on his back with his face upward; his feet were extended and somewhat apart and his toes were turned out. There were three ceiling lights on in the City Hall and the front door was

unlocked. The testimony of one of the officers was that the back door was still locked the second time he went in and the third time he went in it was unlocked and some people were going through it so it was evidently locked when the body was found. His right arm was by his side or on his chest; his left arm was by his left side; his pistol was on his right side touching or near his right hand, but his hand was not gripping the pistol. His Sam Browne belt, overcoat and cap were either in a chair or on the table, and in his cap was a notice of an insurance premium. Mr. Crawford's body was lying about midway in a space in the police station which was six feet eight inches wide, and which was a space between the toilet and the dark room where pictures were developed. His body was on the cement floor and his feet were on the wood floor. The pistol which was ten and one-half inches long belonged to the City of Winnsboro and was the one used by Mr. Crawford as a policeman. It had one exploded cartridge which, from all appearances, had been recently discharged, and the other cartridges were all loaded. He was a right-handed man and shot from the right side. The bullet entering the right side of the head about the temple and went almost straight through his head, came out on the left side slightly below the point of entrance and into a box, through the box into the wall at a point in the wall about the same distance from the floor as the point of the exit from the box, which shows conclusively that the bullet took a straight course through the head, through the box and into the wall but slightly downward, and which also shows that Mr. Crawford was lying flat on his back when the bullet was fired. According to the evidence there was no struggle. The testimony is that the pistol when fired was very near if not touching the right side of the head because it showed powder burns. As stated herein the space in which the body was found was six feet, eight inches wide, and the body took up approximately two feet, so there would be left only about two feet on each side of the body. These facts

certainly would eliminate all probability or possibility of an accident. If he was shot by some intruder or murderer, such a one would have to have lain the body down and then placed himself between it and the wall and on a level with a line of about four or five inches above the floor in order to shoot through the head as was indicated by the course of the bullet.

The record further discloses that the decedent's wife, after being informed that her husband had not reported for duty or been seen on duty on the evening in question, went to a neighbor who is a physician, telling him that she was afraid that her husband had killed himself. Though the decedent's wife was recalled to the witness stand for the purposes of the re-hearing, after this testimony was given at the first hearing, she did not deny having made this statement to the doctor. She did, however, testify that she knew of no reason why her husband would want to commit suicide.

The decedent was highly thought of by his employers and in the community. No coroner's inquest was called for and none was held. There was no testimony indicative of a reason or purpose or intention on the part of any person to kill or otherwise harm the decedent, and no testimony to indicate that during the interval between leaving his house and when the body was found he was engaged in the performance of any duty that might have resulted in his being killed or injured. Nor was there any testimony from which it could be inferred that the firing of the bullet was the result of an accident.

Weighing all of the testimony relating to the facts and circumstances surrounding the decedent during the evening in question, before his death and after his dead body was discovered, there appears no fact or circumstance, and none has been pointed out in the award of the single Commissioner, or in the second opinion of the whole Commission affirming the award, or in the arguments of counsel, from which a reasonable inference may be drawn that the homicide

was the result of either an accident or of an act of some other person than the decedent himself. To say this is to say that there is no testimony from which a reasonable inference might be drawn that the decedent met his death in any other way than through an intentional act of self-destruction.

It is true that in addition to the presumption of law ■ (which remained effective only until evidence from which a conclusion could be deduced was presented) the claimants were aided by an express provision in the Workmen's Compensation Law to the effect that where the employer relies upon the defense of suicide, the burden is upon him to establish this defense. But of course where the testimony on the subject produces a conviction in favor of suicide, that fact shows that the employer has met the burden resting upon him. Only if, after a consideration of all of the testimony, a reasonable inference of suicide cannot be drawn, can it be said that the employer failed to meet the burden.

The strongest statement of the proposition that can be made from the standpoint of the claimants is that in the absence of any evidence explanatory of the means by which death was produced, the statutory burden on the employer would entitle the claimants to recover, but that where as here the evidence gives rise to a definite and reasonable inference that the death was self-inflicted, the burden has been met. To state the matter in another way, if we examine the testimony for the purpose of determining whether a reasonable inference can be deduced therefrom that the decedent came to his death as the result of the accidental firing of a weapon, or as the result of the firing of the weapon by some other person than the decedent, we are unable to find any foundation upon which such an inference could rest and none has been pointed out to us. The fact that the decedent was found lying on the floor flat on his back, in such posture that it was obvious that he had not fallen or been knocked down, and that the bullet which coursed through his head hit at a

point in a nearby wall corresponding in distance from the floor with the place in the left temple which was the exit of the bullet, the argument against suicide becomes clearly unsupportable. To this significant fact must be added such facts as that there was no evidence of any scuffle or of robbery or attempted robbery, or that anyone was in the area where the shooting occurred at the time of the incident, or that anyone had any purpose or motive to shoot the decedent.

Of the several officers and other persons who by reason of friendship for the decedent and his family or by reason of official duty would have naturally sought or brought about an official inquiry if anything other than an obvious case of suicide were presented, only the sheriff failed to expressly concur in the conclusion that this was the correct explanation of the firing of the shot, and his testimony becomes more favorable to the suicide theory than to any other theory of the case when it is considered that he participated in the investigation of the case, and never took or sought or advised any legal or other action by way of further inquiry or otherwise, and on the witness stand offered not the slightest explanation for his lack of express concurrence in the general conclusions reached.

In reaching the aforestated conclusions we have in effect disregarded the testimony of two doctors who upon hypothetical questions, testified that in their opinion the wound which caused the death of claimants' intestate was not self-inflicted. Neither of such doctors saw the body of the decedent at the place where it was found. They based their opinion upon such facts as that the weapon was not found gripped in the hand of the decedent; that his feet were turned outward; the condition of the body, etc. One of the doctors who so testified stated specifically that he did not consider himself an expert "in causes of violent death," and he admitted that most of the physical factors incorporated in the hypothetical questions asked him could well be present in

cases of self-inflicted wounds as in cases of wounds inflicted by violence on the part of another. The other witness, who testified that he had seen about fifteen suicide cases in the course of his career testified that in "most cases" the weapon of a suicide is found gripped in his hand. The hypothetical questions asked these witnesses took no account of the fact that the decedent had been dead for about an hour when his body was discovered by the witnesses who first found it, and that just as there was no eyewitness testimony to the shooting, there was no testimony from which it could be determined whether the body or the weapon had been disturbed after the shooting.

We of course are not discussing the question of the admissibility of the expert testimony in question. It is not at all exceptionable that testimony, expert or otherwise, may be admissible without having sufficient probative value to influence the judgment of the trier of facts. But expert testimony of the character here under discussion, which does not tie in with any of the material facts pointing to suicide, and is not related to a single fact or circumstance connected with the actual shooting to give color or meaning to such fact or circumstance, cannot under the circumstances above disclosed be regarded as anything else than surmise, conjecture, or speculation.

Without reflecting upon expert testimony generally, courts find it necessary to avoid the expansion of a field of testimony which already, under our system, has produced a deplorable situation. Text writers and courts have found it necessary to express grave concern about such testimony and in some cases to utterly reject it as incompatible with reason and experience, or as contrary to the physical facts disclosed by the cases on trial. As Wigmore has expressed it, the present practice of unrestricted admission of expert testimony "has for years exhibited shortcomings which are lamentable. Extreme cases, of frequent occurrence, have

shaken the faith of juries in expert witnesses. Professional men of honorable instincts and high scientific standards look upon the witness box as a golgotha, and disclaim all respect for the law's methods of investigation." 1 Wig. on Ev., 2d Ed., 966. See also 32 C. J. S., Evidence, § 569, pp. 393, 394.

Instances are not wanting in which this and other courts have been called upon to completely reject expert testimony. In addition to the authorities collected in the texts above cited, illustrations may be found in *Hickman v. Aetna Life Ins. Co.,* 166 S. C., 316, 164 S. E., 878; *United States v. Donahue,* 8 Cir., 66 F. (2d), 838; *Grant v. United States,* 5 Cir., 74 F. (2d), 302; *United States v. Ingalls,* 10 Cir., 67 F. (2d), 593; *Svenson v. Mutual Life Insurance Co.,* 8 Cir., 87 F. (2d), 441.

In such cases as *Owens v. Ocean Forest Country Club,* 196 S. C., 97, 12 S. E. (2d), 839, where the question was whether the decedent had committed suicide, and expert testimony was in large measure relied upon to support an award in favor of the decedent's family by the Workmen's Compensation Commission, it will be observed that there were in the testimony physical facts negativing the idea of suicide and to which the expert testimony had direct relation. In the case cited, for example, there was testimony that the decedent was left-handed, whereas the wound was inflicted on the right side of the head, and from other circumstances encompassed within the testimony there was reasonable ground for the inference that the death wound was not self-inflicted. Similar grounds of distinction are readily observed upon an examination of other cases cited by the respondents, such as *Smith v. Durham Life Insurance Co.* 202 S. C., 392, 25 S. E. (2d), 247; *Mandis v. New York Life Insurance Co.,* 177 S. C., 390, 181 S. E., 472; *Smith v. Southern Builders,* 202 S. C., 88, 24 S. E. (2d), 109; and *O'Kelley v. Mutual Life Insurance Company of New York,* 197 S. C., 109, 14 S. E. (2d), 582.

The considerations above stated are of course as applicable to the judicial processes of the Workmen's Compensation Commission as they are to the courts.

The functions of the Workmen's Compensation Commission are of a dual character, administrative and judicial. In the field of judicial action, the Commission may be likened to a judge trying a law case without a jury. The rule that the findings of fact made by a circuit Judge in such a situation, when founded upon testimony which would have been sufficient to support the verdict of a jury, may not be disturbed on appeal, applies to an award made by the Workmen's Compensation Commission when the award comes before the Circuit and Supreme Courts for review. Conversely when the testimony before the Commission does not create a reasonable inference in support of the claimant's case, it is the duty of the Commission to reject the claim.

From the judicial aspect of the Commission's functions it follows that the trial conducted by the single Commissioner and the review made by the whole Commission are not for the purpose of determining whether there is in the case in hand some item or element of testimony upon which the Commission may hang an award for the claimant, or an order refusing an award; on the contrary, whether the testimony be meager or voluminous, direct or circumstantial, the question in each case is whether on the whole record giving effect to all of the testimony adduced, there is sufficient evidence to persuade the Commission as a judicial body that the case made by the claimants has been proved.

In reaching the conclusions hereinbefore stated we have been mindful of the so-called scintilla rule, with respect to the sufficiency of testimony to support the verdict of a jury, or the award of an administrative board. To that rule we have given full adherence. The late lamented

Chief Justice Bonham, writing the opinion of this Court as Associate Justice in the case of *Turner v. American Motorists Insurance Company*, 176 S. C., 260, 180 S. E., 55, 56 stated the rule with his usual incisiveness as follows:

"The appellant labors under the erroneous idea that the Supreme Court has overruled the pronounced principle, to wit, if there is any relevant testimony, amounting to a scintilla, it must be left to the jury to determine its force and effect. The meaning of the rule is that there must be some *evidence* arising out of the testimony which elucidates the issues of fact and which enables the jury to form an intelligent conclusion. It does not authorize the admission of speculative, theoretical, and hypothetical views. It does not set aside the rule of force in this state relating to *res ipsa loquitur,* which doctrine does not prevail in this state.

"In the case of *Taylor v. Railway Co.,* 78 S. C., 552, 556, 59 S. E., 641, 643, this court said: 'A scintilla of evidence is *any material* evidence that, if true, would tend to establish the issue in the mind of a reasonable juror.' (Italics added.)

"Whilst adhering to the scintilla rule, this court has recognized a rule supplemental to the scintilla rule, which is thus propounded in the case of *National Bank v. Thomas J. Barrett, Jr., & Co.,* 173 S. C., 1, 174 S. E., 581, 582: 'If it be conceded that there may be deduced by a process of unusual *finesse* of reasoning that there is a scintilla of evidence * * * nevertheless there is another rule, more founded upon common sense and reason, to the effect that when only one reasonable inference, not just one inference, but one reasonable inference, can be deduced from the evidence, it becomes a question of law for the court, and not a question of fact for the jury.' "

Viewing the matter in this light, and giving effect to the testimony adduced after the reopening of the case as well as the testimony presented at the original hearing before the

single Commissioner, we are unable to find in such testimony any support for the claimants' contention that the decedent died as the result of accident or foul play, or otherwise than as the result of an act of self-destruction, and we are constrained to hold that the rejection of the claim as made in the original opinion of the whole Commission expressed the only inference reasonably deducible from the testimony. We are likewise of the opinion that if the testimony adduced at the second hearing had been before the whole Commission in the first instance, such testimony introduced no element of probative value from which a contrary conclusion could be drawn, and that accordingly the action of the whole Commission on its review of the case is without support in the record.

It is unnecessary, in view of the conclusions above stated, to consider the additional questions raised by appellants.

The Circuit Court is reversed and the cause is remanded to that Court for the entry of judgment in favor of the appellants.

MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES, TAYLOR and OXNER concur.

MR. ASSOCIATE JUSTICE STUKES (concurring):

I concur in the opinion of the Chief Justice in this case, but I think that, for practical purposes at least, the question squarely raised and strenuously argued by both parties, whether the Industrial Commission may grant and hold a rehearing of a former decision and award by it, should be decided in this appeal.

It is an interesting question and not free from difficulty, principally because the language of the Act does not expressly authorize a rehearing or new trial by the Commission. However, upon consideration, such power seems clearly necessary in order to effectuate the purposes and terms of the Act, which latter need not be now adverted to. The Com-

mission is the only and final trier of the facts and if it could not rehear or retry cases pending before it upon after-discovered evidence, it is easy to see that injustices might frequently result and the purpose and intent of Workmen's Compensation be thereby thwarted.

I think it profitable to compare the problem presented to the Court in *State v. David,* 14 S. C., 428, in which it was contended that the Court of General Sessions was without jurisdiction to hear the motion for a new trial upon after-discovered evidence by a convicted defendant who had already unsuccessfully presented a motion for a new trial on the ground of alleged insufficiency of the evidence, upon the minutes of the Court. It was held that the trial Court had power to entertain the contested motion, both under the applicable statute, and because, as the appellate Court said: "It belongs to these courts (referring to the Circuit Courts) as an incident to their original jurisdiction. * * *" The comment was added that in the courts of law of the American Union, a party may, under certain circumstances, become entitled to a new trial on account of newly discovered testimony, the ground being that the facts upon which he then relies are external to those which transpired at the trial.

The warning of the Court upon the importance and delicacy of the power (14 S. C. at page 432) is well worth repeating, as follows: "There can be no doubt that motions of this sort should be received with the utmost caution, because, as it is said by a learned judge, there are but few cases tried in which something new may not be hunted up, and also because it tends to perjury; and, as was said in the case of *State v. Harding,* 2 Bay [267], 268, it would have a mischievous tendency after all the evidence on the part of the state had been fully disclosed to allow one with his life in danger an opportunity, by the assistance of confederates, to procure unprincipled witnesses to contradict the evidence

on the part of the state, and thereby defeat the ends of justice."

The last cited case was a criminal one and its importance was greater than this because the defendant had been sentenced to death but what was said by the Court is none the less applicable in the consideration of what I think is properly the inherent and implied power of the Industrial Commission to grant a new trial or rehearing in proper cases upon after-discovered evidence.

It is well known that our Compensation Law (Act No. 593 of the Acts of the General Assembly of 1935, approved July 17, 1935, and published in 39 Stat. beginning at page 1231) was very largely copied from a similar, earlier statute of our sister state of North Carolina. *Tedars v. Savannah River Veneer Co.,* 202 S. C., 363, 25 S. E. (2d), 235, 147 A. L. R., 914. Meanwhile, before the effective date of our Act, the Supreme Court of North Carolina had this question before it in the case of *Butts v. Montague Bros.,* 208 N. C., 186, 179 S. E., 799, 801. Finding no express authorization in their law for a hehearing of an otherwise final adjudication by the Commission, just as there is no express provision therefor in our subsequent and similar law, the Court found analogy in the terms of their law corresponding (apparently exactly) to sec. 46 of our original Act (now sec. 7035-49 of the Code of 1942), and very clearly and pointedly held that such power exists in the Commission, saying: "All the provisions of the act show that it was the purpose of the General Assembly that the Industrial Commission should have a continuing jurisdiction of all proceedings begun before the commission for compensation in accordance with its terms. The superior court has jurisdiction only when a party to a proceeding has appealed to said court on matters of law involved therein. Findings of fact made by the commission are conclusive, and, when supported by evidence, cannot be reviewed by the superior court.

We think it clear that the commission has the power, in a proper case, and in accordance with its rules and regulations, to grant a rehearing of a proceeding pending before it, and in which it has made an award, on the ground of newly discovered evidence."

With the foregoing I agree and further think that it should be so held in this case for it is important that the Industrial Commission and our citizens and others coming within its jurisdiction know the rules of procedure which govern it and them in all proceedings upon the filing and adjudication of claims under the Compensation Law.

It should be added that the proceedings by and before the Commission are not required to be as precise, and perhaps as tedious, as is the corresponding practice in the Courts. Informal justice may be had, so long as it is justice and not in violation of the law. The Act expressly so provides. The original section 54 (sec. 7035-57, Code of 1942) is in part as follows: "The commission may make rules not inconsistent with this Act, for carrying out the provisions thereof. *Process and procedure under this Act may be summary and simple as reasonably may be."* (Emphasis added.) The emphasized provision was applied by this Court in the following, and possibly other cases: *McDonald v. Palmetto Theatres,* 196 S. C., 460, 13 S. E. (2d), 602, and *King v. Wesner,* 198 S. C., 49, 16 S. E. (2d), 289. And the word "summary," with reference to hearings and determinations, is again used in Code, Sec. 7035-61: "The commission * * * shall hear the parties at issue and their representatives and witnesses, and shall determine the dispute in a summary manner."

I fully agree with the view expressed in the main opinion, that there was no substantial evidence upon which to base the award which followed the rehearing, and that it should be reversed. The opinions of the alleged experts were with-

out substance in view of the physical facts and other evidence, and they were self-contradictory, confused and confusing.

In view of the nature of this supposed expert testimony, which was all that materially conflicted with the many circumstances which pointed unerringly to suicide, I think it unecessary to weigh the evidence. Furthermore, I do not think the latter accurately describes the proper function of the Courts in compensation cases. Weighing implies a balancing of the scales whereby the greater weight or preponderance of the evidence is determined, which course we should not follow.

The late, great former Chief Justice Bonham of this Court, then an Associate Justice, with his usual clarity and force of expression, admirably stated the rule in the compensation case of *Phillips v. Dixie Stores,* 186 S. C., 374, 195 S. E., 646, 647, as follows: "Herein lies the fundamental error of the distinguished circuit judge. By his own statement, he is making himself a participant with the commission in determining 'whether the conclusions of the Commission have *adequate support in the evidence.'* (Italics the author's.) This is just what he is forbidden to do. If there were absolutely no evidence in support of the findings of fact by the Commission, we might say that the question thus becomes question of law. But whether there is a sufficiency of evidence is strictly a matter of fact, and the findings of the commission thereabout are final."

Factual findings of the Commission are, as said, undoubtedly binding upon the courts. 1942 Code, sec. 7035-63. But when such a purported finding is appealed, whether it was grounded upon any competent, substantial evidence is a question of law for decision by the Court, and it will be reversed in the absence of such basis. This rule has been stated many times in former decisions of this Court, found in 34 S. E., Dig., Workmen's Compensa-

tion, Key 1939, and it was very recently restated in *Elrod v. Union Bleachery, S. C.,* 204 S. C., 481, 30 S. E. (2d), 73.

MESSRS. ASSOCIATE JUSTICES FISHBURNE, TAYLOR and OXNER concur.