## 15736

### SHEHANE v. SPRINGS COTTON MILLS *ET AL.*

(34 S. E. (2d), 180)

*Mr. L. R. Jones,* of Kershaw, S. C., Counsel for Appellant,

*Mr. J. E. McDonald* of Chester, S. C., Counsel for Respondent,

May 16, 1945.

Mr. Associate Justice Taylor delivered the unanimous Opinion of the Court:

On December 23, 1943, while employed by Springs Cotton Mills, Lancaster, South Carolina, the claimant, James L. Shehane, who had been in said employment for about eight years prior thereto, as a weaver, while passing between two looms in the scope of his employment, stepped on a piece of slick paper. His foot slipped and caught between lay and shipper lock whereby he was struck on the left testicle, injuring same and front portion of his body in that region.

On or about the 21st day of February, 1944, an agreement for compensation for temporary total disability was entered into whereby claimant was to receive compensation

at the rate of $19.20 per week based upon an average weekly wage of $32.00. Thereafter on March 7, 1944, a final compensation settlement receipt was executed showing a total amount of $49.70 was paid for total temporary disability. The receipt showed that disability terminated as of February 27, 1944, but other records show (by way of medical records) that claimant continued to be treated by the physician.

Thereafter upon application by the claimant a hearing was held on the 21st day of June, 1944, by John W. Duncan, Commissioner, to determine whether or not employee had been paid compensation to which he was entitled, extent of disability, and any other questions which may arise under the terms of the law. On August 11, 1944, an opinion and award in favor of claimant was filed by the said commissioner.

Thereafter on the 22nd day of August, 1944, the defendants through their attorneys requested a review of the findings by the South Carolina Industrial Commission, who on the 8th day of September, 1944, passed an order refusing the application for a review of the findings of the hearing Commissioner and sustaining same.

On the 9th day of October, 1944, the defendants appealed to the Court of Common Pleas for Lancaster County, South Carolina, from the findings and award. Honorable Wm. Grimball passed an order on the 14th day of December, 1944, setting aside the findings and award of the Commission and it is from this order that the claimant now appeals to this Court upon the following exceptions:

"1. That his Honor erred in holding that there was no evidence in the records to sustain the findings of the Commission.

"2. That his Honor erred in determining the weight or effect of the testimony given at the hearing.

"3. That his Honor erred in holding that claimant's ailment was the result of disease and did not arise out of and in the course of his employment.

"4. That his Honor erred in finding of facts in the case since the Commission is the fact-finding body and his Honor is bound thereby."

In reviewing this case on appeal, this Court is of course cognizant of the well-founded rule of law that the Industrial Commission being the fact-finding body and this Court and the Circuit Court both being appellate Courts in workmen's compensation matters, this and the Circuit Courts can only review the facts to determine whether or not there is any competent evidence to support the findings of the fact-finding body. If there is, the Courts are without power to pass upon the force and effect of such evidence. An award may of course be reversed if there is an absence of any competent evidence to support it, but in Workmen's Compensation cases the Courts are not the triers of facts. If the facts proved are capable as a matter of law of sustaining the inferences of fact drawn from them by the Industrial Commission its findings are conclusive in the absence of fraud and neither this Court nor the Court of Common Pleas is at liberty to interfere with them. *Anderson v. Campbell Tile Co.,* 202 S. C., 54, 24 S. E. (2d), 104; *Crawford et al v. Town of Winnsboro et al.,* 203 S. C., 72, 30 S. E. (2d), 841; *Lanford v. Clinton Cotton Mills,* 204 S. C., 423, 30 S. E. (2d), 36; *Strawhorn v. J. A. Chapman Const. Co.,* 202 S. C., 43, 24 S. E. (2d), 116; *Cokeley v. Robert Lee, Inc.,* 197 S. C., 157, 14 S. E. (2d), 889.

Keeping the above in mind this Court has studied the record closely in order to ascertain whether or not there is any competent evidence to support the award of the Industrial Commission which is the fact-finding body in Workmen's Compensation matters for this State.

Dr. Hamilton W. McKay testified in effect that he had specialized in genito-urinary surgery, that he examined the claimant February 22, 1944, at the request of Dr. C. W. Morrison of Lancaster, S. C., and that he found no evidence of trauma. That claimant suffered from an enlarged and inflamed veromontanum but in his opinion this condition was in no way connected with trauma.

Dr. C. W. Morrison testified that he is the surgeon for the Springs Cotton Mill at Lancaster, that he examined the claimant in December, 1943, and found him suffering from an injury to his left testicle. Since the questions in this case involve a construction of the testimony this Court is taking the liberty of quoting quite extensively therefrom. The following are extracts from Dr. Morrison's testimony.

"Q. Dr. Morrison, you had occasion to examine Mr. James L. Shehane back in December, 1943? A. Yes, sir.

"Q. If you don't mind, just go ahead and state to the Court what you found him suffering with? A. Well, he had an injury to his testicle, right or left—I have forgotten which, now.

"The Claimant: Left. A. Left, and it was bluish, you know, swelled, and he gave a history of having fallen against some machine down there at the mill.

"Q. Is it your opinion, Doctor, that this swelling, or bluish color, was caused by a lick? A. I think so.

"The Court: Was it trauma? A. Yes, sir.

"Q. He did have a traumatic injury? A. Yes.

"The Court: Go ahead. A. I don't think there was any disease back of it.

"Q. He had no disease? A. None back of it at the time.

"Q. Have you had occasion to examine him lately, Doctor? A. I guess some weeks ago, now.

"Q. You don't remember off-hand? A. No, sir.

"Q. From the last date of your examination, Doctor, from the injury which he was suffering with could you tell about how long that would exist—the injury would inter-

fere with his work as a weaver in the mill? A. Well, the swelling in a reasonable time—I don't remember just how long off-hand it was, but the swelling disappeared so I recommended sending him to an urologist. I have forgotten exactly when that was, but after he was treated for a reasonable length of time the swelling disappeared.

"Q. Did he come back to you about his injury after he tried to go back to his work? A. Yes, sir.

"Q. He did come back to you? A. Oh, yes.

"Q. For further examination for pain after he tried to work for a little time? A. Yes, sir.

"Q. And from your examination was that pain, in your opinion, caused as a result of the blow on the testicle? A. I couldn't say that. I don't think that the pain existing this long could be caused entirely by the injury.

"Q. But you didn't find anything otherwise that would cause it? A. No, sir.

"The Court: Did you ever dismiss him to return to work? A. I told him to try to work and see how he got along.

"Q. And he did work and came back to you? A. Yes, sir; I think he tried to work some.

"Q. Did he come back to you after he tried to work? A. That is my recollection.

"Q. And you referred him to Dr. McKay in Charlotte? A. Yes, sir.

"Q. Do you do medical—surgical work for the Springs Cotton Mill in Lancaster? A. Some of it.

"Q. Some of it? A. All of it, yes, sir.

"Q. Did you ever recommend that he wear a suspensory? A. Yes, sir. Yes, sir. You see that is just as normal as the other. Of course, if the man says he has pain he is the one that knows it.

"Q. You wouldn't attempt to say that he is malingering? A. I wouldn't say that.

"Q. Now, if a man had a veromontanum which was red, inflamed, could that cause pain? A. Yes, sir.

"Q. Would you normally expect pain? A. Yes, sir.

"Q. Now, Doctor, in your opinion, would you say, or not, that a blow on the testicle would cause the veromontanum to become inflamed and red where the epididymis is not enlarged and there is no induration or tenderness? A. There would be an induration—it forms a knot in it, I mean—I couldn't say now whether a blow caused that, or not, I just don't know.

"The Court: Could a blow on the testicle cause epidymitis? A. Yes, sir.

"The Court: Could a man develop a varicocele from a blow? A. Oh, yes."

An examination of the testimony of the claimant reveals the following:

"Q. I believe you were injured on December the 23rd, 1943? A. Yes, sir.

"Q. From December the 23rd, 1943, up until you received this check you suffered from an injury you received at the Springs Cotton Mill at Lancaster? A. Yes, sir.

"Q. Will you state to this Court what is your condition; has it healed or improved; if so, to what extent? A. No, sir, it has not healed at all. It is still—I am still suffering. It swells when I try to work.

"State whether or not you are still suffering from the effects of that wound.

"The Court: Was it a wound or a blow? A. It was a blow.

"Q. Upon what part of your body? A. On the left side here (indicating).

"The Court: Scrotum.

"Q. On your ball? A. Yes, sir.

"Q. And you stated when you try to work it swells? A. Yes, sir.

"Q. And affects you so you are unable to work? A. Yes, sir.

"Q. Do you try to work any? A. Yes, sir, I have tried several different times.

"Q. How long were you able to work at any particular time? A. One week.

"Q. What? A. One week at a time.

"The Court: One week at a time? A. Yes, sir, I worked one week.

"The Court: Speak a little louder so I can hear you. A. The next week I tried to work again, I swelled up so bad I couldn't work on the job.

"Q. Prior to this injury did you have any swelling, or anything that caused it to swell or anything prior to that accident? A. No, sir, I didn't.

"Q. In other words, you had been working regularly prior to the time you were injured? A. I was.

"Q. Who all have you tried to work for since the injury? A. Well, I worked with Mr. Campbell and I worked with Mr. Jordan on a substitute job, you know. They have substitute jobs.

"The Court: You did try to work? A. Yes, sir.

"Q. At different jobs? A. Yes, sir.

"Q. Was Mr. Campbell an overseer of yours? A. Yes, sir, he was my overseer on my regular job.

"Q. At the time you claim you were injured? A. Yes, sir.

"Q. Did you show Mr. Campbell how you were swollen? A. Yes, sir.

"Q. Did he observe your condition? A. Yes, sir; I showed it to him at that time.

"Q. I believe you said you are not able to perform any service? A. No, sir, I am not.

"The Court: What is your regular type of work? A. Weaving.

"Q. You are a weaver? A. Yes, sir.

"Q. Does your job require you to be on your feet? A. Yes, sir, standing, walking.

"Q. Walking all the time? A. Yes, sir.

"Q. And you said walking is what causes your ball to swell up? A. Yes, sir.

"The Court: When you speak of balls you mean in the region of the scrotum? A. Yes, sir.

"Q. And you have tried on different occasions to do different types of work? A. Yes, sir.

"Q. Did the doctor ever dismiss you, Mr. Shehane? A. No, sir.

"Q. He never did dismiss you? A. No, sir.

"Q. Is the doctor still treating you at this time? A. No, sir—I would go back and forth.

"Q. That is what I say. You are still under his care? A. Yes, sir.

"Q. That is Dr. Morrison, you mean? A. Yes, sir. Dr. C. W. Morrison. He said if there was anything he could do—he didn't know.

"Q. Dr. Morrison and Dr. McKay, are they the only doctors you have seen? A. Yes, sir.

"Q. How often have you seen Dr. Morrison? A. During January and February I saw him practically every day.

"Q. That was before you went back to work? A. Yes, sir, and during the time I was working I was taking shots from him.

"Q. After you returned to work how many times have you been to see him? A. How many times have I been to see him?

"Q. Yes. A. Well, I would say about four or five.

"Q. About four or five? A. Yes, sir.

"Q. Well, now, did you show him that your testicle was swollen? A. Yes, sir.

"Q. You showed him your testicle was swollen? A. Yes, sir, I absolutely did.

"Q. How many times did you show him your testicle was swollen? A. Well, I think every time I went to him.

"Q. I am talking about after you went back to work? A. Every time I went to him and at the time he came to the house. The last trip he came, he came down to the house. It was swollen up so bad I had to lay down in the bed.

"Q. When you signed this release here on the 28th day of February you had been dismissed by Dr. Morrison; he told you it was all right to go back to work? A. No, sir. He told me to go back and try it if I felt like it.

"The Court: Try it? A. Yes, sir, told me to try it."

Mr. J. D. Campbell who was assistant overseer over claimant at the time he received the injury testified to the effect that claimant reported his injury to him. That prior to that time claimant had never complained and that his work was satisfactory. The fact that claimant had so worked for eight years prior thereto is strong evidence to support the statement of Dr. Morrison to the effect that claimant was not a malingerer.

Much of the medical testimony was either indefinite or adverse to the claim of appellant. Therefore, it is upon the foregoing that the contention of the claimant-appellant that there is sufficient testimony to sustain the award of the Commission, that his case must stand or fall.

A study of the complete record in connection with the above shows that claimant worked for this employer satisfactorily for eight years prior to receiving this injury which arose out of and in the course of his employment as a result of which he was paid compensation therefor from December 23, 1943, through March 7, 1944.

That at this time he signed a release and went back to work upon the doctor's advice to "Try to work and see how he got along." There is no question as to anything prior to this time but after working one week claimant (still being treated steadily by the same doctor) was forced to discontinue because of swelling and pain and it is the evidence as

to the award covering this period of time that is now before this Court.

Dr. McKay says claimant's condition is one commonly found and not due in any way to a blow or trauma. Dr. Morrison, on the other hand, testified that he examined the injury at the time and that there was no disease connected therewith and has found *no such evidence since and that he has treated claimant continually since*. That if claimant says he has pain then he is the one who knows.

Considering the record as a whole along with the testimony of claimant and Dr. Morrison, this Court is of the opinion that there was sufficient testimony upon which the fact-finding body might base an award and since neither the Court of Common Pleas nor this Court has the power to pass upon the weight of such evidence it necessarily follows that the order of the Court of Common Pleas should be reversed and the award of the Industrial Commission allowed to stand, and it is so ordered.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and OXNER concur.